ACCEPTED
03-14-00629-CV
3802125
THIRD COURT OF APPEALS
AUSTIN, TEXAS
1/16/2015 3:11:24 PM
JEFFREY D. KYLE
CLERK

NO. 03-14-00629-CV

_____

IN THE COURT OF APPEALS
FOR THE THIRD JUDICIAL DISTRICT AT AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
1/16/2015 3:11:24 PM
JEFFREY D. KYLE
Clerk

_____

LOS FRESNOS CONSOLIDATED INDEPENDENT SCHOOL DISTRICT and
MICHAEL L. WILLIAMS, THE STATE COMMISSIONER OF EDUCATION
*Appellants*,

v.

JORGE VAZQUEZ,
*Appellee*.

_____

On Appeal from the 419th Judicial District Court of Travis County, Texas;
Cause No. D-1-GN-13-003654; before the Honorable Scott H. Jenkins

_____

## APPELLANT COMMISSIONER OF EDUCATION'S BRIEF

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for
Civil Litigation

DAVID A. TALBOT, JR.
Chief, Administrative Law
Division

JENNIFER L. HOPGOOD
State Bar No. 24073010
Assistant Attorney General
Administrative Law Division
OFFICE OF THE TEXAS ATTORNEY GENERAL
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 475-4200
Facsimile: (512) 320-0167

*Attorneys for Appellant,*
*Michael L. Williams,*
*Commissioner of Education*

January 16, 2015

**ORAL ARGUMENT REQUESTED**

# IDENTITY OF PARTIES AND COUNSEL

**Appellant: Los Fresnos Consolidated Independent School District ("Los Fresnos CISD")**

Trial and Appellate Counsel:
Stacy Tuer Castillo
State Bar No. 00796322
WALSH, ANDERSON, GALLEGOS,
GREEN & TREVINO, P.C.
100 NE Loop 410, Suite 900
San Antonio, Texas 78216
Telephone: (210)979-6633
Facsimile: (210)979-7024
Email: scastillo@wabsa.com


**Appellant: Texas Commissioner of Education ("Commissioner")**

Trial and Appellate Counsel:
Jennifer L. Hopgood
State Bar No. 24073010
Assistant Attorney General
Administrative Law Division
Office of the Texas Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 475-4200
Facsimile: (512) 320-0167
Email: jennifer.hopgood@texasattorneygeneral.gov


**Appellee: Jorge Vazquez ("Mr. Vazquez")**

Trial and Appellate Counsel:
Mark W. Robinett
State Bar No. 17083600
BRIM, ARNETT, ROBINETT, & CONNERS, P.C.
2525 Wallingwood Drive, Building 14
Austin, TX 78746
Telephone: (512) 328-0048
Facsimile: (512) 328-4814
Email: mrobinett@brimarnett.com

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ........................................................... ii

TABLE OF CONTENTS ..................................................................................... iii

INDEX OF AUTHORITIES ..................................................................................v

STATEMENT OF THE CASE ...............................................................................x

STATEMENT REGARDING ORAL ARGUMENT ............................................ xi

ISSUES PRESENTED ........................................................................................ xi

STATEMENT OF FACTS ....................................................................................1

SUMMARY OF THE ARGUMENT .....................................................................9

STANDARD OF REVIEW ...................................................................................9

ARGUMENT .......................................................................................................11

    I.    The Court should reverse the trial court's ruling and affirm the
        Commissioner's Decision because substantial evidence supports
        the Board's nonrenewal of Mr. Vazquez' contract. ...............................11

        A.    Non-hearsay evidence provided support for nonrenewal of
            Mr. Vazquez' term contract. .........................................................11

        B.    The Board properly admitted and considered the student
            statements. ......................................................................................12

            1.    The student statements provided support for nonrenewal
                of Mr. Vazquez' term contract. ...........................................13

            2.    The statute does not require a board to use the Texas
                Rules of Evidence at school board nonrenewal hearings. ..........15

            3.    The Board was not required to use the Rules of Evidence
                and, therefore, correctly followed the requirements of
                section 21.207(b). ................................................................17

            4.    The Commissioner correctly decided that the students'
                written statements were admissible under Government
                Code section 2001.081. ........................................................18

                a.    Regarding statutory construction, courts give great
                    weight to the agency's interpretation. ..............................19

b. The Commissioner correctly determined that APA rule 2001.0081 could be applied to nonrenewal hearings conducted by a school board. ..................................21

c. The student statements met the three-pronged requirement of section 2001.081. .........................................23

5. Considering the student statements, substantial evidence supported the Commissioner's Decision to affirm nonrenewal of Mr. Vazquez's contract. .....................................25

C. In the alternative, because Mr. Vazquez has no right to due process in nonrenewal of his contract, the Commissioner could consider any evidence properly admitted under the Board's hearing rules. .......................................................26

D. The trial court order impermissibly reversed the Commissioner's Decision. ............................................................30

II. The Commissioner's Decision was not arbitrary and capricious. ..........33

CONCLUSION & PRAYER...................................................................................35

CERTIFICATE OF COMPLIANCE.....................................................................37

CERTIFICATE OF SERVICE .............................................................................37

# INDEX OF AUTHORITIES

**Cases**

*Auto Convoy Co. v. R.R. Comm'n,*
   507 S.W.2d 718 (Tex. 1974) ...........................................................................11

*Bd. of Trs. of Emps. Ret. Sys. v. Benge*,
   942 S.W.2d 742 (Tex. App.—Austin 1997, writ denied) ...................................31

*City of El Paso v. Pub. Util. Comm'n*,
   883 S.W.2d 179 (Tex. 1994) ...........................................................................33

*Clear Creek Indep. Sch. Dist. v. Comm'r of Educ.*,
   775 S.W.2d 490 (Tex. App.—Austin 1989, no writ) ................................... 10, 11

*DePasquale v. Harrington*,
    599 A.2d 314 (R.I. 1991).................................................................................32

*Dodd v. Meno*,
   870 S.W.2d 4 (Tex. 1994) ................................................................................20

*Entergy Gulf States v. Summers*,
   282 S.W.3d 433 (Tex. 2009)).........................................................................29

*Farris v. Fort Bend Indep. Sch. Dist.*,
   27 S.W.3d 307 (Tex. App.—Houston [1st Dist.] 2000, no pet.)........................11

*Fresh Coat, Inc. v. K-2, Inc.*,
   318 S.W.3d 893 (Tex. 2010) ...........................................................................16

*FTC v. Cement Inst.*,
   333 U.S. 683 (1948) .......................................................................................33

*Gerst v. Nixon*,
   411 S.W.2d 350 (Tex. 1966) ...........................................................................33

*Goodie v. Houston Indep. Sch. Dist.*,
   57 S.W.3d. 646 (Tex. App.—Houston [14th Dist.] 2001, no pet.) .....................31

*Grubbs Nissan Mid-Cities, Ltd. v. Nissan N. Am., Inc.*,
No. 03-06-00357-CV, 2007 WL 1518115, at *10
(Tex. App.—Austin May 23, 2007, pet. denied)....................................................32

*Gulf States Utils. Co. v. Pub. Util. Comm'n*,
841 S.W.2d 459 (Tex. App.—Austin 1992, writ denied) ....................... 33, 34, 35

*Horizon/CMS Healthcare v. Auld*,
34 S.W.3d 887, 906 (Tex. 2000) ........................................................................24

*Lewis v. Southmore Sav. Ass'n*,
480 S.W.2d 180 (Tex. 1972) ....................................................................... 21, 22

*Locklear v. Tex. Dep't of Ins.*,
30 S.W.3d 595 (Tex. App.—Austin 2000, no pet.)..............................................10

*McMullen v. Emps. Ret. Sys.*,
935 S.W.2d 189 (Tex. App.—Austin 1996, writ denied) ....................................31

*Nairn v. Killeen Indep. Sch. Dist.*,
366 S.W.3d 229 (Tex. App.—El Paso 2012, no pet.) ..........................................26

*Nucor v. Steel-Texas v. Pub. Util. Comm'n*,
363 S.W.3d 871 (Tex. App.—Austin 2012, no pet.)............................................20

*Poole v. Karnack Indep. Sch. Dist.*,
344 S.W.3d 440 (Tex. App.—Austin 2011, no pet.)................................... 10, 20

*Presidio Indep. Sch. Dist. v. Scott*,
309 S.W.3d 927 (Tex. 2010) ..............................................................................29

*R.R. Comm'n v. Tex. Citizens for a Safe Future & Clean Water*,
336 S.W.3d 619 (Tex. 2011) ..............................................................................19

*Richardson v. Perales*,
402 U.S. 389 (1971) ............................................................................................33

*Smith v. Nelson*,
53 S.W.3d 792 (Tex. App.—Austin 2001, pet. denied)........................................19

*State v. Pub. Util. Comm'n*,
883 S.W.2d 190 (Tex. 1994) .................................................................... 10, 19, 33

*Stratton v. Austin Indep. Sch. Dist.*,
8 S.W.3d 26 (Tex. App.—Austin 1999, no pet.)....................................................27

*Sw. Bell Tel. Co. v. Combs*,
270 S.W.3d 249 (Tex. App.—Amarillo 2008, pet. denied) ................................20

*Tave v. Alanis*,
109 S.W.3d 890 (Tex. App.—Dallas 2003, no pet.) ...........................................31

*Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care*,
145 S.W.3d 170 (Tex. 2004) ................................................................................30

*Tex. Dep't of Transp. v. T. Brown Constructors,*
947 S.W.2d 655 (Tex. App.—Austin 1997, pet. denied)....................................31

*Tex. Rivers Prot. Ass'n v. Tex. Natural Res. Conserv. Comm'n*,
910 S.W.2d 147 (Tex. App.—Austin 1995, writ denied) ............................. 28, 31

*Tex. State Bd. of Dental Exam'rs v. Sizemore,*
759 S.W.2d 114 (Tex. 1988) ................................................................................10

*Tex. State Bd. of Med. Exam'rs v. Scheffey*,
949 S.W.2d 431 (Tex. App.—Austin 1997, writ denied) ............................ 26, 31

*Veg-Mix, Inc. v. USDA*,
832 F.2d 601 (D.C. Cir. 1987).............................................................................33

**Statutes**

Tex. Crim. Proc. Code Ann. art. 38.071 (West 2005) ............................................23

Tex. Educ. Code ch. 21, subchapter E ...................................................................14

Tex. Educ. Code ch. 21, subchapter F ...................................................................15

Tex. Educ. Code § 21.204(e) ..................................................................................26

Tex. Educ. Code § 21.207(b)................................................................ 12, 15, 17, 24

Tex. Educ. Code § 21.207(c) ............................................................ passim

Tex. Educ. Code § 21.252 ....................................................................15

Tex. Educ. Code § 21.255(a) ...............................................................15

Tex. Educ. Code § 21.255(b) ...............................................................15

Tex. Educ. Code § 21.256(b) ...............................................................22

Tex. Educ. Code § 21.256(d) ........................................... 15, 16, 17, 29

Tex. Educ. Code § 21.256(f) .................................................................23

Tex. Educ. Code § 21.301(e) ...............................................................22

Tex. Educ. Code § 21.304 (f) ............................................................... vii

Tex. Educ. Code § 21.304(e) ............................................................... vii

Tex. Educ. Code § 21.307 ...............................................................9, 22

Tex. Educ. Code § 21.307(e) (West 2012) .............................................9

Tex. Educ. Code § 21.307(f) ...........................................................9, 26

Tex. Gov't Code § 2001.081 (West 2008) ...................................... passim

Tex. Gov't Code § 2001.081(1) .......................................................8, 23

Tex. Gov't Code § 2001.081(3) ............................................................24

Tex. Gov't Code § 2001.174 ................................................................31

**Rules**

Tex. R. Evid. 801(d) ...........................................................................28

**Commissioner's Decisions**

*Carnot v. North East Indep. Sch. Dist.*,
Docket No. 066-R1-605 (Comm'r Educ. 2005)....................................................29

*Dews v. Tyler Indep. Sch. Dist.*,
Docket No. 053-R1-0508 (Comm'r Educ. 2008)......................................... 16, 18

*Dunlap v. Breckenridge Indep. Sch. Dist.*,
Docket No. 334-R1-692 (Comm'r Educ. 1995)....................................................29

*Freeman v. Winona Indep. Sch. Dist.*,
Docket No. 160-R1-785 (Comm'r Educ. 1986)....................................................29

*Gipson v. Ore City Indep. Sch. Dist.*,
Docket No. 178-R1-690 (Comm'r Educ. 1992)....................................................29

*Green v. Brazosport Indep. Sch. Dist.*,
Docket No. 083-R1-0512 (Comm'r Educ. 2012)..................................................16

*La Clair v. Latexo Indep. Sch. Dist.*,
Docket No. 065-R1-0610 (Comm'r Educ. 2010)..................................................30

*Major v. E. Cent. Indep Sch. Dist.*,
Docket No. 024-R1-1184 (Comm'r Educ. 1985)..................................................29

# STATEMENT OF THE CASE

*Nature of the Case*: Mr. Vazquez filed a suit for judicial review of the Commissioner's Decision to deny Mr. Vazquez' appeal of the Los Fresnos CISD School Board's ("the Board") decision to nonrenew Mr. Vazquez' term contract. A.R. vol. 1, at 5.[1] The Commissioner found that substantial evidence existed both to show Mr. Vazquez violated several of the school district's policies and to support the Board's decision to nonrenew Mr. Vazquez' term contract.

*Trial Court*: The Honorable Scott Jenkins, presiding over the 419th Judicial District Court, Travis County, Texas.

*Trial Court Disposition*: The trial court reversed the Commissioner's Decision, remanded the case to the Commissioner to enter an order reversing the action of the Board, and ordered the District to comply with Texas Education Code section 21.304(e) and/or (f). C.R. at 160.

---

[1] "A.R." stands for administrative record and is followed by the relevant page number—here, the "LR" bates number. The administrative record is in the Reporter's Record. Because the Reporter's Record keeps the administrative record's original numbering, citations refer to the administrative record.

## STATEMENT REGARDING ORAL ARGUMENT

The Commissioner requests oral argument because it will aid in understanding the facts, the arguments, and the issues at stake.

## ISSUES PRESENTED

**I.**    **Whether the Commissioner's Decision to uphold the Los Fresnos School Board's decision to nonrenew Mr. Vazquez's teaching contract is supported by substantial evidence.**

**II.**    **Whether the Commissioner's Decision to uphold the Los Fresnos School Board's decision to nonrenew Mr. Vazquez's teaching contract is arbitrary and capricious.**

## STATEMENT OF FACTS

Mr. Vazquez taught business- and computer-related classes at a ninth grade campus in Los Fresnos CISD. A.R. vol. 2, at 130, 230. He had a term contract. A.R. vol. 2, at 234, signed May 16, 2012. During the 2011-2012 school year, he received two written warnings about his performance: one incident occurred just prior to his signing of the contract and the second incident occurred just after. *See* A.R. vol. 2, at 174 (Notice of Warning, dated Apr. 10, 2012); 294 (Notice of Warning, dated Apr. 24, 2012). Mr. Vazquez received a third written warning during the 2012-2013 school year. A.R. vol. 2, at 135-36, 163-64 (Notice of Warning, signed Mar. 5, 2013). Mr. Vazquez admitted he committed each of these three infractions. A.R. vol. 2, at 126-27; 118/line 16; 130-31.

**First Notice of Warning**

During the 2011-2012 school year, Mr. Vazquez showed one of his classes a portion of the movie *Burlesque*. Mr. Vazquez had failed to get permission to show his students the movie. AR vol. 2, at 126-27. A parent complained about his showing of the movie. AR vol. 2, at 174. Mr. Vazquez received a written warning for showing part of the movie to students without prior authorization and without viewing the film beforehand. A.R. vol. 2, at LR0169-70, 174, 324. Mr. Vazquez admitted to showing the movie and that the movie was not appropriate for the classroom. A.R. vol. 2, at 245.

1

**Second Notice of Warning**

Mr. Vazquez' principal Mr. Villarreal received a complaint from a parent that Mr. Vazquez pretended to videotape a student during his class. Notice of Warning, A.R. vol. 2, at 294. Mr. Vazquez received a second written warning for pretending to film, or threatening to film, the student during his class as a disciplinary tool because he claimed the student was off-task and disrupting the class by twirling her hair. A.R. vol. 2, at LR294, 334-41. Mr. Vazquez admitted to pretending to film the student. A.R. vol. 2, at 118. [2]

On May 14, 2012 the Superintendent met with Mr. Vazquez to discuss this second incident. A.R. vol. 2, at 98-99.

**Third Notice of Warning**

During the 2012-2013 school year, Mr. Vazquez received a third written warning about his performance after he questioned a student about the student's manner of dress. A.R. vol. 2, at LR164, 292, 298-303. Mr. Vazquez admitted to asking twice about the student's attire. A.R. vol. 2, at 150. Another teacher told the Principal that a student had brought the incident to the teacher's attention. A.R. vol. 2, at 14-15. Subsequently, the Principal spoke with the student who Mr. Vazquez had upbraided and several other students regarding the incident, and the students wrote statements about the incident. A.R. vol. 2, at 298, 302-03. After

---

[2]     After this videotaping incident the principal gathered eight student statements to determine what had occurred.

2

speaking with Mr. Vazquez about the incident, the principal issued a notice of warning to Mr. Vazquez. A.R. vol. 2, at 173.

**Principal's Investigation into Third Incident**

During Principal Villarreal's investigation of the third incident, he interviewed students in Mr. Vazquez' class. *See, e.g.*, A.R. vol. 2, at 33-35. These interviews confirmed that the incident had occurred. *Id.* The actual student involved stated that Mr. Vazquez had questioned him about his attire. *Id.* Two other students corroborated this incident. *Id.* Mr. Vazquez admitted to questioning the student twice about his attire. A.R. vol. 2, at 130-31.

During the Principal's investigation of this third incident, interviews with students revealed other instances of Mr. Vazquez' classroom behavior that caused Mr. Villarreal concern. *See, e.g.*, A.R. vol. 2, at 306, 318, 319-21. The Principal gathered student statements by asking the students open-ended questions and testified that the students' statements corroborated one another. A.R. vol. 2, at 163. Mr. Villarreal testified that he was concerned by Mr. Vazquez's pattern of behavior and ultimately recommended non-renewal. A.R. vol. 2, at 165-68.

**The Executive Director's Investigation**

The District's executive director for support services ("Executive Director") conducted an independent investigation after Mr. Vazquez filed a grievance in connection with the third written warning. A.R. vol. 2, at 83-85.

3

The Executive Director testified that the statements she obtained from students were consistent with those obtained by the Principal. She then determined that the third notice of warning was justified. A.R. vol. 2, at 199-203.

**The Student Statements**

Three sets of student statements were admitted at the non-renewal hearing:

- **Second Notice of Warning**: Eight student statements taken by Principal Jimmy McDonough, principal during the 2011-2012 school year, corroborated the incident for which the Second Notice of Warning was issued—the incident where Mr. Vazquez pretended to videotape a student who was twirling her hair. *See* Bd. Ex. 17, A.R. vol. 2, at LR333-41, each statement dated Apr. 25, 2012.

- **Third Notice of Warning, Principal's Investigation**: Student statements were taken by Principal Joseph Villarreal, principal during the 2012-2013 school year. Three of the statements corroborated the incident for which the Third Notice of Warning was issued—the incident where Mr. Vazquez addressed a student regarding the student's attire. *See* Bd. Ex. 1, A.R. vol. 2, at LR298, 302-03. One of the statements was of the student who was the target of Mr. Vazquez' comments. A.R. vol. 2, at 298. These student statements were not dated.[3]

- **Third Notice of Warning, Executive Director's Investigation**: The Executive Director had students from the class the reported attire incident occurred complete statements. Three of the statements corroborated the incident documented in the Third Notice of Warning. These three statements were dated April 25, 2013.[4] A.R. vol. 2, at 301 (by student himself), 299-300 (by fellow classmates). The Executive Director conducted her investigation to prepare for a grievance

---

[3] There are two versions of these statements, the original handwritten statements written by the students who made the statements, District Ex. 17, and verbatim typed versions of each statement, part of District Ex. 1.

[4] As with the statements collected by Principal Villarreal, there are handwritten originals of each statement, written by the students who made the statements. Ex. 17; Ex. 1.

hearing after Mr. Vazquez filed a grievance in response to the Third Notice of Warning.[5] A.R. vol. 2, at 83-85.

During the two investigations of the third incident, the students who were interviewed reported that Mr. Vazquez asked the student, who was wearing both suspenders and a belt, "did you purposely wear that to make yourself look stupid?" A.R. vol. 2, at LR298-303. He repeatedly questioned the student about his clothing and would not allow the student to change the subject. *Id.* The student reported feeling embarrassed and harassed by Mr. Vazquez. *Id.*

During the two independent investigations undertaken by Principal Villarreal and the Executive Director regarding the third incident, the students wrote about other incidents involving Mr. Vazquez. Mr. Vazquez did not admit to these other incidents.

Students stated the Mr. Vazquez commented inappropriately on a student's physical appearance when he implied the student was fat. This incident was reported by the student herself and corroborated by other students. A.R. vol. 2, at 305-06. The Third Notice of Warning mentions this incident. A.R. vol. 2, at 173.

On another occasion, Mr. Vazquez believed a student had called him an "asshole." A.R. vol. 2, at LR156-57, 313. When the student denied this, he forced the class to vote on what she had said. A.R. vol. 2, at LR319-22. This incident was

---

[5] The Executive Director took statements for a level 2 grievance hearing. The level 2 grievance hearing was conducted in May 2013. A.R. vol. 2, at 83-86.

reported by the student herself, and the incident was corroborated by other students. A.R. vol. 2, at 320-21. This incident was included in the Third Notice of Warning. A.R. vol. 2, at 173.

Additionally, students reported that Mr. Vazquez discussed his personal life with students, informing them that if he failed to show up for work, it would be because he was hung over from clubbing and drinking the night before. A.R. vol. 2, at LR308-09, 316.[6]

**Recommendation of Non-Renewal**

On May 17, 2013, the Board sent Mr. Vazquez a letter indicating the Board's decision to propose the nonrenewal of Mr. Vazquez' term contract. Ex. 1, A.R. vol. 2, at 286-88.

**The Board Hearing on Nonrenewal**

At the three-hour hearing, the school district presented the testimony of three witnesses: Principal Villarreal, the Executive Director, and the Superintendent. Mr. Vazquez cross-examined each of the three witnesses. Principal Villarreal testified

---

[6] The students reported other, non-corroborated, comments that Mr. Vazquez had supposedly made. A.R. vol. 2, at LR157-58, 314-17. Students also stated that Mr. Vazquez' comments made them feel, "dumb," "embarrassed and very confused," "awkward," "befuddled," "harassed," "confused," "offended," "upset," "embarrassed," "insecure," "angry and annoyed," "uncomfortable and awkward," and that they "couldn't even look at him." A.R. vol. 2, at 299-310.

Students also reported that Mr. Vazquez' comments in the classroom were "unnecessary," and his class was "just a sad place to be." A.R. vol. 2, at LR298, 307-08.

6

about the three write-ups. Mr. Vazquez testified and admitted to committing each of the infractions. A.R. vol. 2, at 126-27, 118/line 16, 130-31.

In addition to these admissions, the Board also heard testimony by the Principal regarding the student statements he had obtained during the investigation of the third incident. A.R. vol. 2, at 33-35. The Executive Director then testified about her second and independent investigation, during which she took the additional student statements. A.R. vol. 2, at 83-85.

During his defense, the only testimony Mr. Vazquez offered was his own. He failed to call any witnesses, either on his own behalf or for rebuttal.

The school district introduced twenty-four exhibits, and Mr. Vazquez introduced eighteen exhibits. The student statements were introduced as evidence over hearsay objections. A.R. vol. 2, at 146.

At the conclusion of the hearing, the Board voted to uphold the recommendation that Mr. Vazquez' contract be non-renewed. A.R. vol. 2, at 282.

**Subsequent Appeal of Decision to Nonrenew**

Mr. Vazquez appealed the Board's decision. The Commissioner decided that substantial evidence existed to support the Board's decision. Comm'r's Decision, C.R. at 55-74. Mr. Vazquez subsequently filed a suit for judicial review.

**District Court Decision**

The district court assumed, without finding, that the standards set out in Texas Government Code section 2001.081 applied to this case. Tex. Gov't Code Ann. § 2001.081 (West 2008). The court ruled that the student statements, to the extent that they were hearsay and that the Commissioner considered them under the 2001.081 hearsay exception, did not meet the requirement of Texas Government Code section 2001.081(1) because the statements were not "necessary to ascertain facts not reasonably susceptible of proof" under the rules of evidence as applied in a nonjury case in a Texas district court. C.R. at 158. The district court additionally determined that even if Mr. Vazquez lacked a property interest the hearsay statements should not have been admitted because their admission would violate a teacher's statutory right to "cross adverse witnesses." C.R. at 159.

## SUMMARY OF THE ARGUMENT

The Texas Rules of Evidence did not apply to the hearing before the Board to nonrenew Mr. Vazquez' term contract; thus, the Board properly admitted student statements during the nonrenewal hearing, and the Board's decision to not renew Mr. Vazquez' contract was supported by substantial evidence. The student statements could have been admissible under Texas Government Code section 2001.081. Tex. Gov't Code § 2001.081. The Commissioner, therefore, properly determined that substantial evidence existed and denied Mr. Vazquez' appeal. Alternatively, if the Court were to hold that the Commissioner's Decision in the present case was in error, the proper remedy would be to remand this case back to the Commissioner. Nor was the Commissioner's Decision arbitrary and capricious. Therefore, the Court should reverse the trial court's order and affirm the Commissioner's Decision.

## STANDARD OF REVIEW

A court reviews a ruling by the Education Commissioner under the substantial evidence rule. Tex. Educ. Code Ann. § 21.307(e) (West 2012). A court may not reverse the Commissioner's decision unless (1) "the decision was not supported by substantial evidence"; or (2) the Commissioner's conclusions of law are erroneous. Tex. Educ. Code § 21.307(f). Whether the decision of the school district is also supported by substantial evidence is not before a reviewing court. *Id.*

9

The Commissioner's decision "is supported by substantial evidence if reasonable minds could have reached the same conclusion." *Poole v. Karnack Indep. Sch. Dist.*, 344 S.W.3d 440, 443 (Tex. App.—Austin 2011, no pet.) (citing *Tex. State Bd. of Dental Exam'rs v. Sizemore,* 759 S.W.2d 114, 116 (Tex. 1988) (considering evidence as a whole)); *see also Clear Creek Indep. Sch. Dist. v. Comm'r of Educ.*, 775 S.W.2d 490, 493 (Tex. App.—Austin 1989, no writ) ("Substantial evidence review is not to determine whether the agency reached the correct conclusion, but whether some reasonable basis is found in the record for the agency's action."). Although substantial evidence is more than a mere scintilla, the evidence in the record may preponderate against the Commissioner's decision and still amount to substantial evidence. *Poole*, 344 S.W.3d at 443.

The Court may not substitute its judgment for that of the Commissioner. *State v. Pub. Util. Comm'n*, 883 S.W.2d 190, 203 (Tex. 1994). The Commissioner's decision is presumed to be valid, and the non-renewed teacher has the burden to prove invalidity of the decision. *See id.*

Lastly, the Commissioner's decision should be reversed only if the absence of substantial evidence has prejudiced a party's substantial rights. *Locklear v. Tex. Dep't of Ins.*, 30 S.W.3d 595, 597 (Tex. App.—Austin 2000, no pet.).

# ARGUMENT

**I.** **The Court should reverse the trial court's ruling and affirm the Commissioner's Decision because substantial evidence supports the Board's nonrenewal of Mr. Vazquez' contract.**

The non-hearsay evidence, coupled with properly admitted student statements, provided substantial evidence for the Commissioner to uphold the Board's decision to nonrenew Mr. Vazquez' Contract. Because the standard for substantial evidence only requires more than a mere scintilla of evidence, the Court should hold that the Commissioner properly decided that substantial evidence existed to nonrenew Mr. Vazquez' term contract. *See Farris v. Fort Bend Indep. Sch. Dist.*, 27 S.W.3d 307, 312 (Tex. App.—Houston [1st Dist.] 2000, no pet.) ("If substantial evidence would support either affirmative or negative findings, we must uphold the agency decision and resolve any conflicts in favor of the agency decision.") (citing *Auto Convoy Co. v. R.R. Comm'n,* 507 S.W.2d 718, 722 (Tex. 1974)). Moreover, the Commissioner showed that "some reasonable basis" existed in the record for the action taken by the Board. *See Clear Creek Indep. Sch. Dist.*, 775 S.W.2d at 493.

**A.** **Non-hearsay evidence provided support for nonrenewal of Mr. Vazquez' term contract.**

The Board admitted into evidence non-hearsay exhibits submitted by both the District and Mr. Vazquez. First, Mr. Vazquez admitted to committing each of the three violations. A.R. vol. 2, at 126-27; 118/line 16; 130-31. Moreover, the

11

Principal, the Executive Director, and the Superintendent also testified, under oath, as to each of the three violations and their conclusions about whether Mr. Vazquez had violated district policies.[7] A.R. vol. 2, at 117-282. Mr. Vazquez had the opportunity to, and indeed did, cross-examine each of the three witnesses. The Board, as the tier of fact, assessed the credibility of each of the four witnesses.

The school district and Mr. Vazquez also offered into evidence multiple documents. These documents provided additional sources of non-hearsay evidence to support the Board's decision to nonrenew Mr. Vazquez' term contract. *See, e.g.*, the three Notices of Warning, A.R. vol. 2, at 174, 294, 173.

### B. The Board properly admitted and considered the student statements.

During the nonrenewal hearing, the Board admitted student statements. The Board conducted Mr. Vazquez' nonrenewal hearing pursuant to section 21.207(c) of the Texas Education Code. This section does not provide that the Texas Rules of Evidence apply to a nonrenewal hearing conducted before a school board. Nor did the District's rules, adopted pursuant to section 21.207(b), require that the Texas Rules of Evidence apply to Mr. Vazquez' nonrenewal hearing. In the absence of

---

[7] While only the third violation occurred during the contract year in question, the first two incidents can be used to show that Mr. Vazquez was aware that such behavior was not appropriate. And while the Commissioner did find that "the issue of what hearsay exceptions apply is dispositive in the present case," the non-hearsay evidence still contributed to the quantum of evidence that the Commissioner found met the substantial evidence standard. *See* Comm'r's Decision at 16, C.R. at 70.

12

any requirement that only evidence admissible under the Rules of Evidence be considered by the Board, the Commissioner properly determined that the statements were correctly admitted under Texas Government Code section 2001.081. Therefore, Mr. Vazquez failed to meet his burden to show that the Commissioner's Decision was subject to reversal, and the trial court erred in finding that the Commissioner could not rely on section 2001.081.

### 1. The student statements provided support for nonrenewal of Mr. Vazquez' term contract.

During the nonrenewal hearing, the student statements were admitted into evidence.[8] These student statements, gathered in three separate administrative investigations by three administrators, provided multiple, independent, and corroborated confirmations of Mr. Vazquez' violations of district policies. The first set of student statements, taken by former Principal McDonough, corroborated the second incident, where Mr. Vazquez had pretended to tape a student in a misguided attempt to discipline her for twirling her hair and supposedly disrupting class. Board Ex. 17, at A.R. vol. 2, at 333-41.

After a teacher reported the third incident, in which Mr. Vazquez upbraided a student about his attire at least twice in front of his classmates, Principal Villarreal collected student statements, three of which corroborated the reported

---

[8] Counsel for Mr. Vazquez was granted a standing hearsay objection to the introduction of these statements as evidence. A.R. vol. 2, at 146.

inappropriate comments Mr. Vazquez made to the student. See Board Ex. 1, at A.R. vol. 2, at LR298, 302-03. The Executive Director, after Mr. Vazquez filed a grievance regarding the third incident, also collected several student statements. Each of the statements was written by the students themselves. Three of the statements confirmed and corroborated the third incident. *See* Board Ex. 1, at A.R. vol. 2, at LR299-301.

The student statements, elicited in response to open-ended questions, contained allegations of additional misconduct by Mr. Vazquez. The additional misconduct that was also confirmed and corroborated included: (1) Mr. Vazquez insinuating that a student was overweight, A.R. vol. 2, at 305-06; (2) he misheard a student, thought she called him a bad name, and then had the class vote on whether she had called him the name, A.R. vol. 2, at 320-21; and (3) him telling students he went clubbing and if he missed school, it would be because he was hung over, A.R. vol. 2, at 308, 316. The principal testified as to the contents of the student statements.

The students did not appear at the Board hearing. The District had no subpoena authority to compel their appearance, nor did the Board request their appearance. *See* Tex. Educ. Code ch. 21, subchapter E. This lack of subpoena power when a board conducts a nonrenewal hearing is in marked contrast to when a certified hearing examiner conducts a nonrenewal hearing. Only in the latter

14

hearing does the trier of fact have subpoena power. *Compare* Tex. Educ. Code § 21.207(c), *with* Tex. Educ. Code § 21.255(b).

There is also no indication that Mr. Vazquez attempted to have any students, parents, or teachers testify on his behalf at the hearing.

### 2. The statute does not require a board to use the Texas Rules of Evidence at school board nonrenewal hearings.

The Texas Rules of Evidence did not apply to Mr. Vazquez' nonrenewal hearing. *See* Tex. Educ. Code § 21.207(c). A nonrenewal hearing conducted pursuant to section 21.207(c) of the Education Code simply requires the consideration of "evidence," in contrast with hearings conducted pursuant to Subchapter F of chapter 21, which requires having a certified hearing examiner rule on the "admissibility of evidence" and specifies that "the Texas Rules of Evidence apply at the hearing." Tex. Educ. Code §§ 21.252, .255(a), .256(d). Indeed, a school has the discretion to use the rules found in Subchapter F. Tex. Educ. Code § 21.207(b) ("The board *may* use the process established under Subchapter F.") (emphasis added).

The Texas Supreme Court has recently reiterated the following guidance on statutory construction:

> Our ultimate purpose when construing statutes is to discover the Legislature's intent. Presuming that lawmakers intended what they enacted, we begin with the statute's text, relying whenever possible on the plain meaning of the words chosen. In addition, we examine the entire act to glean its meaning, try to give meaning to each word, and

15

avoid treating statutory language as surplusage where possible, . . . Finally—and essential here—we presume that the entire statute is intended to be effective.

*Fresh Coat, Inc. v. K-2, Inc.*, 318 S.W.3d 893, 901 (Tex. 2010) (internal quotations and citations omitted). The legislature has drawn a clear distinction in the statute between "evidence" required to nonrenew a contract at the end of its term, and the higher standard—of "admissi[ble] evidence" at a hearing to which the "Texas Rules of Evidence apply"—that is required to terminate or suspend a teacher. To read section 21.207 to require evidence admissible under the Rules of Evidence would render the language in sections 21.252-.256 as mere surplusage, a reading contrary to the plain text of the statute and in violation of the rules of statutory construction.

A nonrenewal hearing conducted by a school board is a less formal venue than a nonrenewal hearing heard by a certified hearing examiner. When a nonrenewal hearing is heard by a certified hearing examiner, the statute provides a teacher with greater rights, including the application of the Rules of Evidence. *See, e.g.*, Tex. Educ. Code § 21.256(d). Specifically, the Commissioner has determined that the Texas Rules of Evidence do not apply to nonrenewal hearings. *See, e.g.*, *Green v. Brazosport Indep. Sch. Dist.*, Docket No. 083-R1-0512 (Comm'r Educ. 2012); *Dews v. Tyler Indep. Sch. Dist.*, Docket No. 053-R1-0508 (Comm'r Educ. 2008). True and correct copies of the decisions are attached at the **Appendix**.

16

Therefore, under the rules of statutory construction and the concomitant Commissioner's rulings, the Rules of Evidence do not apply to nonrenewal hearings. *Compare* Tex. Educ. Code § 21.207(c) (no requirement to use Texas Rules of Evidence, or any other evidentiary standard, at nonrenewal hearings), *with* Tex. Educ. Code § 21.256(d) (expressly stating that Texas Rules of Evidence apply to nonrenewal hearings before an independent hearing examiner).

### 3. The Board was not required to use the Rules of Evidence and, therefore, correctly followed the requirements of section 21.207(b).

Under the Texas Education Code, "[t]he [nonrenwal] hearing must be conducted in accordance with rules adopted by the board." Tex. Educ. Code § 21.207(b). Here, the Board had adopted the following hearing procedures:

> The conduct of the hearing shall be under the presiding officer's control and shall generally follow the steps listed below:
>
> > 1. After consultation with the parties, the presiding officer shall impose reasonable time limits for presentation of evidence and closing arguments.
> >
> > 2. The hearing shall begin with the administration's presentation, supported by such proof as it desires to offer.
> >
> > 3. The employee may cross-examine any witness for the administration.
> >
> > 4. The employee may then present such testimonial or documentary proof, as desired, to offer in rebuttal or general support of the contention that the contract be renewed.
> >
> > 5. The administration may cross-examine any witnesses for the employee and offer rebuttal to the testimony of the employee's witnesses.
> >
> > 6. Closing arguments may be made by each party.

17

A record of the hearing shall be made.

Los Fresnos CISD Policy DFBB (LOCAL); A.R. vol. 2, at 297. Significant to this appeal, the Board did not have a policy that required the application of the Rules of Evidence.[9] Additionally, at a minimum, under the Education Code:

> (c) At the hearing before the board or the board's designee, the teacher may:
>> (1) be represented by a representative of the teacher's choice;
>> (2) hear the evidence supporting the reason for nonrenewal;
>> (3) cross-examine adverse witnesses; and
>> (4) present evidence.

Tex. Educ. Code § 21.207(c). At the beginning of Mr. Vazquez' nonrenewal hearing, the parties were informed of the Board policies governing the hearing, specifically that "[n]either party has the ability to require the attendance of any witnesses, nor is this hearing controlled by the Texas Rule[s] of Evidence." A.R. vol.2, at 125.

### 4. The Commissioner correctly decided that the students' written statements were admissible under Government Code section 2001.081.

In his decision, the Commissioner properly determined that the liberal hearsay exception of section 2001.081 could be applied in the context of a

---

[9] *See Dews v. Tyler Indep. Sch. Dist.*, Docket No. 053-R1-0508 (Comm'r Educ. 2008), at n.2 (recommending that "[i]t would be . . . wise for a school district to adopt . . . a policy that specified what evidentiary rules apply when a proposed nonrenewal is heard by the board"). Copy of decision attached at **Appendix**.

nonrenewal hearing conducted by a school board.[10] Mr. Vazquez asserted, without citation to any authority, that traditional hearsay rules apply. Pl.'s Br. 5, at C.R. 22. The Commissioner correctly decided that the Texas Rules of Evidence do not explicitly apply to a board nonrenewal hearing. And consequently, when a board has not adopted the Rules of Evidence, a more liberal evidentiary standard may be applied, including the evidentiary rules for administrative hearings found at Texas Government Code section 2001.081. Here, the Commissioner soundly relied on the liberal hearsay exception that applies in the administrative context to determine that the Board had properly admitted the student statements.

### a. Regarding statutory construction, courts give great weight to the agency's interpretation.

While questions of law are reviewed *de novo*, the interpretation of a statute by an agency charged with its enforcement is entitled to serious consideration or great weight. *State v. Pub. Util. Comm'n*, 883 S.W.2d at 196; *see also R.R. Comm'n v. Tex. Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011) (giving deference to and upholding the Commission's interpretation of "public interest" in the statute it administers); *Smith v. Nelson*, 53 S.W.3d 792, 795 (Tex. App.—Austin 2001, pet. denied). As this Court has previously noted, where

---

[10] The Commissioner also observed that this was an issue of first impression: What evidentiary standard should the Commissioner apply in conducting a substantial evidence review of the Board's nonrenewal decision where the Texas Rules of Evidence did not apply to the Board's hearing?

19

there is "room for policy determinations in a statute or regulation, we normally defer to the agency's interpretation" unless the interpretation is "plainly erroneous or inconsistent with the language of the statute, regulation, or rule." *Sw. Bell Tel. Co. v. Combs*, 270 S.W.3d 249, 260 (Tex. App.—Amarillo 2008, pet. denied).

The Texas Supreme Court has held that in education law the Court should defer to the Commissioner's "reasonable determination in an area where he possesses considerable authority and expertise." *Dodd v. Meno*, 870 S.W.2d 4, 7 (Tex. 1994); *Poole*, 344 S.W.3d at 443-44. A court defers to the Commissioner's interpretation of the Education Code if such an interpretation is reasonable and does not contradict the plain language of the statute. *Id.* at 443 (noting that the Commissioner's interpretation of the Education Code "merits serious consideration" if the interpretation "is reasonable and does not contradict the plain language of the statute") (citing *Dodd v. Meno,* 870 S.W.2d at 7)); *Nucor v. Steel-Texas v. Pub. Util. Comm'n*, 363 S.W.3d 871, 878-79 (Tex. App.—Austin 2012, no pet.) (same proposition).

When the Education Code is ambiguous or silent as to a term, the question "is not whether an interpretation of the statute posed by [the plaintiff] is reasonable, but whether the Commissioner's interpretation is reasonable and does not contradict the plain language of the statute." *Poole*, 344 S.W.3d at 444.

## b. The Commissioner correctly determined that APA rule 2001.0081 could be applied to nonrenewal hearings conducted by a school board.

Prior to the passage of the Administrative Procedure Act ("APA"), the Texas Supreme Court held that, although hearsay rules apply in administrative hearings, "considerable discretion is permitted in allowing evidence to be introduced by virtue of the liberal exceptions to the rule." *Lewis v. Southmore Sav. Ass'n*, 480 S.W.2d 180, 186 (Tex. 1972). [11] These exceptions are now codified in the APA at Texas Government Code section 2001.081:

> The rules of evidence as applied in a nonjury civil case in a district court of this state shall apply to a contested case except that evidence inadmissible under those rules may be admitted if the evidence is:
>
> > (1) necessary to ascertain facts not reasonably susceptible of proof under those rules;
> >
> > (2) not precluded by statute; and
> >
> > (3) of a type on which a reasonably prudent person commonly relies in the conduct of the person's affairs.

Tex. Gov't Code § 2001.081. Although the APA does not directly apply to nonrenewal hearings, at a minimum, evidence meeting the requirements of section

---

[11]     The *Lewis* court provided an example of an exception to the rule as being:

the one which admits publications of market prices or statistical compilations which are generally recognized as reliable and regularly used in a trade or specialized activity by those persons so engaged. When this predicate is proven, these publications are admissible for the truth of the matter published.

*Id.* Similarly, in this case, student statements that were shown to be reliable and regularly used by District officials were admissible under liberal exceptions to the hearsay rule. AR vol. 2, at 163, 199-203.

2001.081 is admissible at a nonrenewal hearing conducted before a school board.[12] When the Texas Supreme Court held that liberal exceptions to the hearsay rule apply in the administrative context, the court did not, however, specify the perimeters of the liberal exceptions. *See Lewis*, 480 S.W.2d at 186. In deciding what the perimeters of such exceptions might be, the Commissioner looked to the Legislature's determination of what proper exception to the Rules of Civil Evidence exists under the Administrative Procedures Act. The Commissioner's Decision, therefore, reflects a reasonable interpretation of caselaw and statute when he determined that Texas Government Code section 2001.081's liberal exception to the hearsay rule may be applied to evidence admitted at a nonrenewal hearing conducted by a school board was.

The Commissioner correctly determined that in "a hearing on the proposed nonrenewal of a term contract which is heard by a school board, hearsay evidence may be admitted if it meets standards set out in Texas Government Code section 2001.081." Comm'r's Decision, C.R. at 73 (Conclusions of Law 6, 8) (concluding that the Board "did not abuse its discretion when it entered into evidence the student statements").

---

[12]     The construction of the statute supports the application of 2001.081 to non-renewal hearings conducted before a school board. *Compare* Tex. Educ. Code § 21.307 (not affirmatively stating that the APA applies), *with* Tex. Educ. Code §§ 21.256(b), 21.301(e) (explicitly stating that proceedings under those sections are not subject to the APA).

### c. The student statements met the three-pronged requirement of section 2001.081.

The student statements met the three requirements of section 2001.081. First, introduction of their written statements was "necessary to ascertain facts not reasonably susceptible to proof" under the Rules of Evidence. *See* Tex. Gov't Code § 2001.081(1). Mr. Vazquez's students are the only ones, besides Mr. Vazquez himself, who have first-hand knowledge of his classroom behavior. But, because the District could not subpoena the students, the Board could not ensure the students' appearance at the hearing. Also, it was unlikely that their parents would allow them to testify and face a teacher who had embarrassed and belittled them.

Additionally, the following factors also support admission under the first prong: the short length of time for a nonrenewal hearing, which is conducted as a portion of a Board meeting; a Board's possible reluctance to subject students to further public humiliation to recount the incidents; and the fact that the witnesses were minors.[13] The Superintendent well-expressed these concerns, stating:

> [W]e didn't call any children today because we have a responsibility to protect the children. To subject them to the imbalance of power that would—they would have to experience here coming before a Board where the only time they come here is when we praise them for their

---

[13] When hearings are conducted by a hearing officer, the statute expressly provides procedural protections for children who are testifying. *See* Tex. Educ. Code § 21.256(f) ("To protect the privacy of a witness who is a child, the hearing examiner may: (1) close the hearing to receive the testimony of the witness; or (2) order that the testimony or a statement of the witness be presented using the procedures prescribed by Article § 38.071, Code of Criminal Procedure.") (citing Tex. Crim. Proc. Code Ann. art. 38.071 (West 2005)). In contrast, no procedural guidelines are given for hearings conducted by a board.

accomplishments. ***To have to come here and have to relive and be questioned about what they have already answered would be highly inappropriate***.

A.R. vol. 2, at 164 (emphasis added).[14] Further, in determining that the first requirement was met, the Commissioner relied on his familiarity of the nature of student testimony at teacher contract hearings.

Second, no statute precludes introduction of the student statements. *See* Tex. Gov't Code § 2001.081(2). Rather, under Texas Education Code section 21.207(b), the District determines the rules governing hearings, and the District had no rule excluding hearsay evidence. *See* A.R. vol. 2 at 297.

Third, the student statements were of a type on which a reasonably prudent person would rely. *See* Tex. Gov't Code § 2001.081(3). The student statements—provided in two independent investigations to the Principal and the Executive Director respectively—corroborated each other. A.R. vol. 2, at 206; A.R. vol. 2, at 163, 414-38, 450-57. The District superintendent testified that the consistency and specificity of the student statements convinced him that the incidents happened as the students reported. A.R. vol. 2, at 224. As such, the statements were admissible under the hearsay exceptions found at Texas Government Code section 2001.081.

---

[14] Because evidentiary rulings are generally reviewed under an abuse of discretion standard, the school board's evidentiary rulings should be affirmed as long as they were not abuses of discretion. *Horizon/CMS Healthcare v. Auld*, 34 S.W.3d 887, 906 (Tex. 2000).

Neither section 21.207(c) of the Education Code, nor the District's non-renewal hearing rules, which simply restate the requirements of section 21.207(c), were violated by admission of the student statements. The Board properly relied upon the student statements as part of the totality of evidence in determining to nonrenew Mr. Vazquez's term contract.

**5. Considering the student statements, substantial evidence supported the Commissioner's Decision to affirm nonrenewal of Mr. Vazquez's contract.**

The proposed notice of nonrenewal issued to Mr. Vazquez stated that the students' statements were one reason, among others, for nonrenewal. Notice of Proposed Non-Renewal of Term Contract, A.R. vol. 2, at 286. The notice also stated that the actions described in the student statements, along with other actions detailed in the notice, provided grounds for nonrenewal under District Policy DFBB (LOCAL). A.R. vol. 2, at 286-88. These grounds included, among others, failure to meet the District's standards of professional conduct; failure to maintain the dignity of the profession and demonstrate personal integrity and exemplify honesty; and violation of the code of ethical conduct toward students by intentionally, knowingly, or recklessly treating students in a manner that adversely affects or endangers the learning and mental health of the student. A.R. vol. 2, at 286-305. Because substantial evidence in the form of properly admitted student statements supported at least one ground for nonrenewal of Mr. Vazquez's

25

contract, the Commissioner correctly concluded that "[t]here is substantial evidence to support the nonrenewal of Petitioner's term contract," and this Court should affirm the Decision. A.R. vol. 1, at 23 (Conclusion of Law 9). *See also* Tex. Educ. Code § 21.307(f); *Tex. State Bd. of Med. Exam'rs v. Scheffey*, 949 S.W.2d 431, 437 (Tex. App.—Austin 1997, writ denied) (substantial evidence to support any one of the reasons given for agency decision is sufficient to uphold decision).

C.      **In the alternative, because Mr. Vazquez has no right to due process in nonrenewal of his contract, the Commissioner could consider any evidence properly admitted under the Board's hearing rules.**

The Commissioner found that the Board's admission of the student statements was proper under the liberal exceptions to the hearsay rule now codified under Texas Government Code section 2001.081. And he indicated that an even more liberal standard might be applicable because under current law no property interest is at stake when a term contract is proposed for nonrenewal.

Because Mr. Vazquez had no property interest in his one-year term contract with the District beyond the term of that contract, he had no right to due process in nonrenewal of his contract. *See* Tex. Educ. Code § 21.204(e) ("A teacher does not have a property interest in a contract beyond its term."). *See also Nairn v. Killeen Indep. Sch. Dist.*, 366 S.W.3d 229, 245 (Tex. App.—El Paso 2012, no pet.) (when a teacher "does not have a constitutionally protected property interest in h[is] position with the District . . . he is unable to establish a violation of due process").

26

Thus, Mr. Vazquez had no right to the application of any particular evidentiary standard during the District's non-renewal hearing.[15] *See id.*; *see also Stratton v. Austin Indep. Sch. Dist.*, 8 S.W.3d 26, 30 (Tex. App.—Austin 1999, no pet.) (holding that district's one-hour limitation on presenting evidence was not sufficient ground for reversal of non-renewal decision because teacher had no right to due process in the hearing).

In his briefing, Mr. Vazquez failed to address an essential question: if a petitioner is not entitled to due process rights, what is the basis for providing that petitioner with the procedural protection of the TRE's hearsay rule?

Because the District's hearing rules did not prohibit the introduction or consideration of hearsay evidence, the students' statements were properly admitted into evidence. A.R. vol. 2, at 297. Thus, the Commissioner's conclusions that "Respondent did not abuse its discretion when it entered into evidence the student statements" and "there is substantial evidence to support the nonrenewal of

---

[15] Although the Commissioner did reach the issue of whether the evidentiary standard codified in Government Code section 2001.081 could be applied in cases where the Board conducts a non-renewal hearing, he also left open the possibility that a lesser evidentiary standard applies, concluding: "Whether these standards should be lessened because a teacher does not have a property interest in a term contract beyond the contract's [term] need not be considered in the present case." A.R. vol. 1, at 23 (Conclusion of Law 6).

And, although some prior Commissioner decisions in appeals from Board non-renewal hearings have assumed the application of hearsay rules or the Texas Rules of Evidence, the Commissioner has never determined the evidentiary standard to be applied in these cases. A.R. vol. 1, at 18.

Petitioner's term contact" were supported by substantial evidence, and the Commissioner's Decision should be affirmed. A.R. vol. 1, at 23; *Tex. Rivers Prot. Ass'n v. Tex. Natural Res. Conserv. Comm'n*, 910 S.W.2d 147, 155 (Tex. App.— Austin 1995, writ denied) (as long as a properly supported finding in the order supports an agency's action, a court will uphold the action).

The district court also erroneously ignored the issue of lack of a property interest. The court reasoned that because a teacher is allowed to cross-examine adverse witnesses when a school board conducts a nonrenewal hearing, the written student statements should not have been allowed in evidence. *See* Tex. Educ. Code § 21.207(c)(3). If this reasoning were a correct statement of the law, not just student statements but much evidence that would be allowed in under an exception to the hearsay rule would not be allowed.[16] The district court's interpretation of the law must be rejected because it is clearly contrary to the statute at issue. Section

---

[16] "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tex. R. Evid. 801(d). Exceptions to the hearsay rule allow statements made for the truth of the matter asserted to be entered into evidence without bringing the maker of statement to testify before the tribunal.

If the requirement to allow cross examination of witnesses somehow bans the use of exceptions to the hearsay rule there would be many absurd results. For example, a school district may propose a teacher for nonrenewal because the teacher failed to report on his application that he was fired from his last teaching job in another district. When the administration tries to enter into evidence the letter of termination with a business record affidavit and the teacher objects that he has no opportunity to cross-examine the writer of the letter, under the trial court's reasoning, and interpretation, of the rules of evidence, the teacher's objection would have to be sustained and the letter could not be admitted into evidence. Absurdly, if the district wanted to prove that the teacher was fired, the district would have to bring in a witness from the teacher's previous school district to authenticate the letter.

21.207(c) provides a teacher with the right to cross-examine adverse witnesses, but it does not prohibit the application of exceptions to the hearsay rule. Also, such an interpretation would give more procedural rights to a teacher when a nonrenewal is heard by a school board than when a nonrenewal is heard by a certified hearing examiner. A comparison of the two statutory provisions also undercuts the court's reasoning. *Compare* Tex. Educ. Code § 21.207(c) (allowing for voluntary application of sections such as 21.256), *with* § 21.256(d) (requiring the application of the Rules of Evidence). *See also Presidio Indep. Sch. Dist. v. Scott*, 309 S.W.3d 927, 930 (Tex. 2010) ("'Where the statutory text is clear, an appellate court presumes the words chosen are "'the surest guide to legislative intent.'"") (quoting *Entergy Gulf States v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009)).

Additionally, the Commissioner has long held that evidence meeting an exception to the hearsay rule may be admitted in a nonrenewal hearing conducted by a school board. *See Major v. E. Cent. Indep Sch. Dist.*, Docket No. 024-R1-1184 (Comm'r Educ. 1985); *Freeman v. Winona Indep. Sch. Dist.*, Docket No. 160-R1-785 (Comm'r Educ. 1986); *Gipson v. Ore City Indep. Sch. Dist.*, Docket No. 178-R1-690 (Comm'r Educ. 1992); *Dunlap v. Breckenridge Indep. Sch. Dist.*, Docket No. 334-R1-692 (Comm'r Educ. 1995); *Carnot v. North East Indep. Sch. Dist.*, Docket No. 066-R1-605 (Comm'r Educ. 2005); *La Clair v. Latexo Indep.*

*Sch. Dist.*, Docket No. 065-R1-0610 (Comm'r Educ. 2010).[17] The Commissioner's interpretation of the Term Contract Nonrenewal Act, which was initially enacted in 1981 and then recodified in 1995, is long standing. Because the Commissioner's interpretation goes back over one-quarter century, and has been repeatedly affirmed, the doctrine of legislative acquiescence applies. *See Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care*, 145 S.W.3d 170, 176 (Tex. 2004) ("If an ambiguous statute that has been interpreted by a court of last resort or given a longstanding construction by a proper administrative officer is re-enacted without substantial change, the Legislature is presumed to have been familiar with that interpretation and to have adopted it.").

The district court's basis for its ruling must also be rejected because this issue was not raised in Mr. Vazquez' *Petitioner's Motion for Rehearing*. Rather, he has always maintained that the Rules of Evidence applied to his nonrenewal hearing and that he should prevail because under the Rules of Evidence no exception to the hearsay rule permitted admission of the student statements.

**D.    The trial court order impermissibly reversed the Commissioner's Decision**.

The Court must uphold the Commissioner's Decision in this case "on any legal basis shown in the [administrative] record even if . . . an erroneous legal basis" is stated for the Decision. *Bd. of Trs. of Emps. Ret. Sys. v. Benge*, 942

---

[17]    Copies of each Commissioner's decision are attached at the **Appendix**.

30

S.W.2d 742, 744 (Tex. App.—Austin 1997, writ denied); *accord McMullen v. Emps. Ret. Sys.*, 935 S.W.2d 189, 191 (Tex. App.—Austin 1996, writ denied). *See also Goodie v. Houston Indep. Sch. Dist.*, 57 S.W.3d. 646, 650 (Tex. App.— Houston [14th Dist.] 2001, no pet.) ("the Commissioner's reasoning for his decision is immaterial if his conclusion is correct"); *Tave v. Alanis*, 109 S.W.3d 890, 893 (Tex. App.—Dallas 2003, no pet.) (noting same with respect to Commissioner's conclusions of law).

Substantial evidence to support any one of the reasons given for the decision is sufficient to uphold the agency decision. *Scheffey*, 949 S.W.2d at 437. As long as a properly supported finding given in the order supports an agency's action, a court will uphold the action despite the existence of other findings that are irrelevant or unsupported by the record. *Tex. Rivers Prot. Ass'n*, 910 S.W.2d at 155.

Alternatively, the district court erred when it failed to remand the matter back to the Commissioner after the court failed to affirm any part of the Commissioner's Decision. *See* Tex. Gov't Code § 2001.174. If the Court were to hold that the Commissioner's Decision in the present case was in error, the proper remedy would be to remand this case back to the Commissioner. Courts are not to dictate how administrative agencies are to correct errors. *Tex. Dep't of Transp. v. T. Brown Constructors,* 947 S.W.2d 655, 659-60 (Tex. App.—Austin 1997, pet. denied). If this court for the first time sets out the standards for evaluating hearsay

evidence when a school board conducts a nonrenewal hearing, the Commissioner should have the opportunity to determine whether the case should be remanded to Respondent so that a hearing can be conducted in accordance with the new standards.

Also, the trial court order failed to consider any legal basis for the Commissioner's Decision. Rather, the trial court focused solely on the Commissioner's use of the section 2001.081 hearsay exception to find that the student statements were properly admitted. The trial court also failed to show that the Commissioner abused his discretion when he applied the APA hearsay exception. Rather, case law supports the Commissioner's Decision. *See Grubbs Nissan Mid-Cities, Ltd. v. Nissan N. Am., Inc.*, No. 03-06-00357-CV, 2007 WL 1518115, at *10 (Tex. App.—Austin May 23, 2007, pet. denied) (mem. op., not designated for publication).[18]

---

[18] As the Court noted:

> We review the agency's rulings on the admissibility of evidence under the abuse of discretion standard we apply to trial courts. Although Grubbs is correct that the rules of evidence apply in administrative hearings, the standard for admissibility of evidence is broader for administrative proceedings than it is in the trial court. *See* Tex. Gov't Code Ann. § 2001.081 (West 2000) (allowing admissibility of otherwise inadmissible evidence if (1) necessary to ascertain facts not reasonably susceptible to proof under the rules of evidence; (2) not precluded by statute; and (3) of a type reasonably relied upon by a prudent person). The agency has broad discretion in deciding whether to admit expert testimony in an administrative hearing, and its decision will not be overturned on appeal absent an abuse of discretion.

*Id.* (internal citations omitted). *See also DePasquale v. Harrington*, 599 A.2d 314, 316 (R.I. 1991) ("Both the United States Supreme Court and this court have stated directly that hearsay

Accordingly, the district court's Final Judgment should be reversed.

## II. The Commissioner's Decision was not arbitrary and capricious. [19]

"To determine if an agency acted arbitrarily and capriciously, even though substantial evidence supports its order or action, we look to see if the order was based on a consideration of all relevant factors." *Gulf States Utils. Co. v. Pub. Util. Comm'n*, 841 S.W.2d 459, 474 (Tex. App.—Austin 1992, writ denied).

An agency's exercise of its discretion may be reversed as arbitrary and capricious only if it constitutes a clear abuse of discretion. *State v. Pub. Util. Comm'n*, 883 S.W.2d at 201. "An agency's decision is arbitrary or results from an abuse of discretion if the agency: (1) failed to consider a factor the legislature directs it to consider; (2) considers an irrelevant factor; or (3) weighs only relevant factors that the legislature directs it to consider but still reaches a completely unreasonable result." *City of El Paso v. Pub. Util. Comm'n*, 883 S.W.2d 179, 184 (Tex. 1994) (citing *Gerst v. Nixon*, 411 S.W.2d 350, 360 n.8 (Tex. 1966)).

Mr. Vazquez asserted that the Commissioner's Decision was arbitrary and capricious because the decision was "influenced by an overabundance of hearsay."

---

evidence is admissible in administrative proceedings.") (citing *Richardson v. Perales*, 402 U.S. 389, 409-10 (1971); *FTC v. Cement Inst.*, 333 U.S. 683, 705-06 (1948)); *Veg-Mix, Inc. v. USDA*, 832 F.2d 601, 606 (D.C. Cir. 1987) ("if hearsay evidence meets the standards of the Administrative Procedure Act by being relevant, material, and unrepetitious . . . agencies are entitled to weigh it according it its 'truthfulness, reasonableness, and credibility'").

[19]    While the trial court's order did not specifically address Mr. Vazquez' second issue, for the sake of completeness the Commissioner provides briefing to the Court on this second issue— whether the Commissioner's Decision was arbitrary and capricious.

Pl.'s Br. 13. Plaintiff fails to explain how this asserted "overabundance of hearsay" caused the Commissioner's Decision to be arbitrary and capricious. *See id.* Regardless, because the Commissioner considered of all relevant factors, the Decision was not arbitrary and capricious. *Gulf States Utils. Co.*, 841 S.W.2d at 474 ("To determine if an agency acted arbitrarily and capriciously, even though substantial evidence supports its order or action, we look to see if the order was based on a consideration of all relevant factors.").

In affirming nonrenewal of Mr. Vazquez' contract, the Commissioner considered the evidence including witness testimony, written warnings and responses, and student statements; relevant statutes; and prior Commission decisions. (Conclusion of Law 10) (concluding that "[t]he decision to non-renew Petitioner's term contract is not arbitrary, capricious, or unlawful"), A.R., vol. 1, at 5-24. The student statements, properly admitted under Texas Government Code section 2001.081, and the District's hearing rules, showed a pattern of inappropriate behavior by Mr. Vazquez. A.R. vol. 1, at 20, 23; A.R. vol. 2, at 63. District officials testified both as to the reliability of the statements and as to Mr. Vazquez' numerous written warnings and the specific reasons why his conduct led to a recommendation of nonrenewal. A.R. vol. 2, at 163-68, 206-25. Further, the Commissioner considered Mr. Vazquez' testimony and responses to the written warnings. A.R. vol. 1, at 20; A.R. vol. 2, at 547-51.

Because the Commissioner considered all relevant factors in affirming nonrenewal of Mr. Vazquez' contract, the decision was not arbitrary or capricious. *See Gulf States Utils. Co.*, 841 S.W.2d at 474.

## CONCLUSION & PRAYER

The Court should reverse the district court's Final Judgment and affirm the Commissioner's Decision because the Commissioner correctly decided that substantial evidence existed to support the Board's decision to not renew Mr. Vazquez' term contract after the Board determined that Mr. Vazquez violated several district policies. Alternatively, if the Court were to hold that the Commissioner's Decision in the present case was in error, the proper remedy would be to remand this case back to the Commissioner.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

DAVID A. TALBOT, JR.
Chief, Administrative Law Division

*/s/ Jennifer L. Hopgood*
JENNIFER L. HOPGOOD
State Bar No. 24073010
Assistant Attorney General

35

OFFICE OF THE ATTORNEY GENERAL OF TEXAS
Administrative Law Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 475-4300
Facsimile: (512) 320-0167
jennifer.hopgood@texasattorneygeneral.gov

***Attorneys for the Texas Education Agency***

## CERTIFICATE OF COMPLIANCE

I certify that the brief submitted complies with Texas Rules of Appellate Procedure 9 and the word count of this document is 7,287.

Date: January 16, 2015.

/s/ Jennifer L. Hopgood
JENNIFER L. HOPGOOD

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served on January 16, 2015, on the following by electronic service and by email:

Stacy Tuer Castillo
WALSH, ANDERSON, GALLEGOS,
GREEN & TREVINO, P.C.
100 NE Loop 410, Suite 900
San Antonio, Texas 78216
Telephone: (210) 979-6633
Facsimile: (210) 979-7024
Email: scastillo@wabsa.com

Mark W. Robinett
BRIM, ARNETT, ROBINETT, & CONNERS, P.C.
2525 Wallingwood Drive, Building 14
Austin, TX 78746
Telephone: (512) 328-0048
Facsimile: (512) 328-4814
Email: mrobinett@brimarnett.com

/s/ Jennifer L. Hopgood
JENNIFER L. HOPGOOD

# APPENDIX

1. *Carnot v. North East Indep. Sch. Dist.*,
      Docket No. 066-R1-605 (Comm'r Educ. 2005)

2. *Dews v. Tyler Indep. Sch. Dist.*,
      Docket No. 053-R1-0508 (Comm'r Educ. 2008)

3. *Dunlap v. Breckenridge Indep. Sch. Dist.*,
      Docket No. 334-R1-692 (Comm'r Educ. 1995)

4. *Freeman v. Winona Indep. Sch. Dist.*,
      Docket No. 160-R1-785 (Comm'r Educ. 1986)

5. *Gipson v. Ore City Indep. Sch. Dist.*,
      Docket No. 178-R1-690 (Comm'r Educ. 1992)

6. *Green v. Brazosport Indep. Sch. Dist.*,
      Docket No. 083-R1-0512 (Comm'r Educ. 2012)

7. *La Clair v. Latexo Indep. Sch. Dist.*,
      Docket No. 065-R1-0610 (Comm'r Educ. 2010)

8. *Major v. E. Cent. Indep. Sch. Dist.*,
      Docket No. 024-R1-1184 (Comm'r Educ. 1985)

# Tab 1

*Carnot v. North East Indep. Sch. Dist.*,

Docket No. 066-R1-605 (Comm'r Educ. 2005)

DOCKET NO. 066-R1-605

| | | | |
|---|---|---|---|
| FRANCES CARNOT | § | BEFORE THE | |
| | § | | |
| | § | | |
| V. | § | COMMISSIONER OF EDUCATION | |
| | § | | |
| | § | | |
| NORTH EAST INDEPENDENT | § | | |
| SCHOOL DISTRICT | § | THE STATE OF TEXAS | |

## **DECISION OF THE DESIGNEE OF THE COMMISSIONER**

Petitioner, Frances Carnot, complains of the decision of Respondent, North East Independent School District, to nonrenew her term contract. Christopher Maska is the Administrative Law Judge appointed by the Commissioner of Education to hear this cause. Petitioner is represented by Herman H. Segovia, Attorney at Law, San Antonio, Texas. Respondent is represented by Richard A Morris, Attorney at Law, San Antonio, Texas.

### Findings of Fact

After due consideration of the record and matters officially noticed, it is concluded that the following Findings of Fact are supported by substantial evidence and are the findings of fact that can best support Respondent's Decision[1]:

1. Respondent employed Petitioner under a term contract for the 2004-2005 school year.

2. Written notification that Petitioner's contract had been nonrenewed was mailed to Petitioner on May 5, 2005, and Petitioner received the notice on May 18, 2005.

3. The Petition for Review was filed with the Commissioner on June 2, 2005.

4. June 2, 2005 is within 20 days of May 18, 2005.

5. The Chronology of Events is a document admitted into evidence that was created by Petitioner's supervisor listing Petitioner's deficiencies.

---

[1] The standard of review is further explicated in *Bosworth v. East Central Independent School District*, Docket No. 090-R1-803 (Comm'r Educ. 2003).

6.      On page 27, lines 1-9 of the transcript, Petitioner's supervisor states that Ms. Gregory told her that Petitioner and another employee were responsible for confusion and disorganization concerning file management.

7.      Petitioner's contract was nonrenewed because she failed to properly do her job, not because she had complained about her supervisor.

8.      Petitioner was given an opportunity to correct her failings.

Discussion

Petitioner contends that Respondent's decision to nonrenew her term contract should be overturned because Petitioner was not afforded due process, the board's decision was based on hearsay, Petitioner was nonrenewed for exercising free speech, and Respondent did not allow Petitioner to remediate deficiencies.  Respondent denies these claims and alleges that the Commissioner lacks jurisdiction to hear this case.

Jurisdiction

Respondent argues that the Commissioner lacks jurisdiction over this case because Petitioner's appeal was untimely filed.  Texas Education Code section 21.301(a) reads:

> Not later than the 20[th] day after the date the. . .  board advises the teacher of its decision not to renew the teacher's contract under Section 21.208, the teacher may appeal the decision by filing a petition for review with the commissioner.

The notification referred to under Texas Education Code section 21.208 is written notification.  The timeline to appeal begins to run upon written notification.

Respondent contends that the written notification of nonrenewal was mailed on May 5, 2005, and that Petitioner received the notice on May 18, 2005.  The Petition for Review was filed with the Commissioner on June 2, 2005.  Since June 2, 2005 is within 20 days of May 18, 2005, it would appear that the Petition for Review was timely.  However, Respondent asserts that applying the mailbox rule means that Petitioner is

deemed to have received notification on May 5, 2005, and this makes the Petition for Review untimely.

Mailbox Rule

Respondent relies on the mailbox rule provided in 19 TAC §§ 157.1049(b) and 157.1050. 19 TAC § 157.1049(b) applies the mailbox rule found in Texas Rules of Civil Procedure 21 and 21a to documents filed with the Commissioner. 19 TAC § 157.1050 requires documents filed with the Commissioner to be served on other parties using the same method of service. These provisions do not apply to the case at bar. A notice of nonrenewal is not required to be filed with the Commissioner. However, it may be argued that a mailbox rule could be held to apply. *Coggin v. Longview Indep. Sch. Dist.*, 289 F3d 326, 329 (5th Cir. 2002) *aff'd on other grounds on rehearing en banc* 337 F.3d 459 (5th Cir. 2003).

Assuming for the sake of argument that the mailbox rule does apply, it is concluded that the Petition for Review was timely filed. While the mailbox rule makes service complete when a document is properly placed in the United States mail, Texas Rule of Civil Procedure 21a provides an exception:

> Nothing herein shall preclude any party from offering proof that the notice or instrument was not received, or, if service was by mail, that it was not received within three days from the date of deposit. . . and upon so finding, the court may extend the time for taking the action required of such party or grant such other relief as it deems just.

Because the notification was not received within three days of mailing, assuming that the Texas Rule of Civil Procedure mailbox rule applies, Petitioner's timeline for filing her Petition for Review is extended until June 7, 2005. The Petition for Review was timely filed.

Due Process

Petitioner objects that she was not provided with meaningful due process. Due process does not apply to this case because Petitioner's contract was nonrenewed. Texas Education Code section 21.204(e) provides that "A teacher does not have a property interest in a term contract beyond its term." A nonrenewal ends a contract at the end of the contract's term. Two courts of appeal have ruled that because teachers do not have property interests in term contracts outside of the contracts' terms, due process does not apply to nonrenewals. *Stratton v. Austin Indep. Sch. Dist.*, 8 S.W.3d 26, 29-30 (Tex. App.-Austin 1999, no pet.); *Whitaker v. Moses*, 40 S.W.3d 176, 179 (Tex. App.-Texarkana 2001, no pet.). Petitioner was not entitled to due process.

Hearsay

Petitioner argues that the Chronology of Events and a statement by Petitioner's supervisor should not have been admitted into evidence because they were hearsay. In both cases, the statements are hearsay and should not have been admitted. The Chronology of Events is a document that was created by Petitioner's supervisor listing Petitioner's deficiencies. However, any error is harmless. The first objection that Petitioner made to the Chronology of Events was that it was cumulative. Trans. p.23, l. 16-17. The Commissioner may only overturn a district's decision for a procedural error, if the error "was likely to have led to an erroneous decision. TEX. EDUC. CODE § 21.303(c). Allowing in cumulative evidence is not likely to result in error.

The statement Petitioner objects to on page 27 of the transcript is hearsay. The statement by Petitioner's supervisor was that Ms. Gregory told her that Petitioner and another employee were responsible for confusion and disorganization concerning file management. Respondent contends that an exception to the hearsay rules applies to this statement: a then existing, mental, emotional, or physical condition. TEX. R. EVID. 803(3). It has been held that "[t]he exception does not extend to statements of past external facts or conditions." *Ochs v. Martinez*, 789 S.W.2d 949, 959 (Tex. App.-San

Antonio 1990, writ denied). The statement in question was one of past external facts. The exception does not apply to this statement. However, this statement alone, or in conjunction with the admission of the Chronology of Events, was not likely to have led to an erroneous decision.

Free Speech

Petitioner contends that the real reason her contract was nonrenewed was that she had complained about inappropriate expenditures. However, there is considerable evidence in the record that Petitioner was nonrenewed because she failed to properly do her job. Petitioner's claim that she was only disciplined after she made the report is not supported by the record.

Remediation

Petitioner contends that she should have been given an opportunity to remediate any deficiencies. There is no right to remediation. *Weatherwax v. Fort Worth Independent School District*, Docket No. 080-R21298 (Comm'r Educ. 1999) *aff'd on other grounds; Nelson v. Weatherwax*, 59 S.W.3d 340 (Tex. App.-Fort Worth 2001, pet. denied). However, Petitioner was given an opportunity to remediate.

Conclusion

Respondent's decision to nonrenew Petitioner's contract should be affirmed. A term contract is entitled to due process protections only during the contract's term. Due process protections do not apply when a contract is proposed for nonrenewal. While two erroneous rulings were made concerning hearsay, these rulings did not lead to an erroneous decision. Petitioner's contract was not nonrenewed because of her exercise of free speech. While Petitioner was not entitled to remediation, Respondent gave her an opportunity to correct errors.

Conclusions of Law

After due consideration of the record, matters officially noticed, and the foregoing Findings of Fact, in my capacity as Designee of the Commissioner of Education, I make the following Conclusions of Law:

1.     The Commissioner of Education has jurisdiction over this case based on Texas Education Code section 21.301.

2.     Petitioner's timeline for filing her Petition for Review began on May 18, 2005.  The Petition for Review was timely filed on June 2, 2005.  TEX. EDUC. Code § 21.301.

3.     Because a teacher does not have a property interest in a term contract beyond the contract's term, a teacher whose contract is proposed for nonrenewal is not entitled to due process protections.  TEX. EDUC. CODE § 21.204(c).

4.     Petitioner's claim that Respondent did not provide her with due process does not state a claim for which relief may be granted.  19 TAC § 157.1056(a).

5.     The Chronology of Events should have been excluded as hearsay.

6.     The statement made at page 27 lines 1-9 of the transcript should have been excluded as hearsay.

7.     The then existing, mental, emotional, or physical condition exception to the hearsay rule does not apply to page 27, lines 1-9 of the transcript.

8.     Allowing into evidence the Chronology of Events and page 27, lines 1-9 of the transcript was not likely to lead to an erroneous decision by the board.  TEX. EDUC. CODE § 21.303(c).

9.     The nonrenewal of Petitioner's contract should not be overturned due to Petitioner's claim that her contract was nonrenewed because she exercised free speech. The record does not support a finding that her contract was nonrenewed for exercising free speech.

10.     There is no right to remediation.

11.     Because Petitioner was not entitled to remediation, and because she received remediation, Respondent's decision to nonrenew her contract should not be overturned for a lack of remediation.

12.     Respondent's decision to nonrenew Petitioner's contract should be affirmed.

## ORDER

After due consideration of the record, matters officially noticed, and the foregoing Findings of Fact and Conclusions of Law, in my capacity as Designee of the Commissioner of Education, it is hereby

ORDERED that Petitioner's appeal be, and is hereby DENIED.

SIGNED AND ISSUED this 20th day of July, 2005.

_____
ROBERT SCOTT
CHIEF DEPUTY COMMISSIONER
BY DESIGNATION

# Tab 2

*Dews v. Tyler Indep. Sch. Dist.,*

*Docket No. 053-R1-0508 (Comm'r Educ. 2008)*

| | | |
|---|---|---|
| SHARAN DEWS | § | BEFORE THE |
| | § | |
| | § | |
| | § | |
| V. | § | COMMISSIONER OF EDUCATION |
| | § | |
| | § | |
| TYLER INDEPENDENT | § | |
| SCHOOL DISTRICT | § | THE STATE OF TEXAS |

## DECISION OF THE COMMISSIONER

Petitioner, Sharan Dews, complains of the decision of Respondent, Tyler Independent School District, to nonrenew her term contract. Christopher Maska is the Administrative Law Judge appointed by the Commissioner of Education to hear this cause. Petitioner is represented by Michael J. Currie, Attorney at Law, Austin, Texas. Respondent is represented by John C. Hardy, Attorney at Law, Tyler, Texas.

### Findings of Fact

After due consideration of the record and matters officially noticed, it is concluded that the following Findings of Fact are supported by substantial evidence and are the Findings of Fact that best support Respondent's decision[1].

1.     Respondent employed Petitioner under a term contract for the 2007-2008 school year.

2.     By letter of March 24, 2008, Respondent notified Petitioner that her contract was proposed for nonrenewal for the following reasons:

> 1. Deficiencies pointed out in observation reports, appraisals, or evaluations, supplemental memoranda, or other communications.
>
> 2. Failure to fulfill duties or responsibilities.
>
> 3. Incompetency or inefficiency in the performance of duties.

---

[1] *See* 19 TEX. ADMIN. CODE § 157.1073(h); *Bosworth v. East Central Independent School District*, Docket No. 090-R1-803 (Comm'r Educ. 2003).

4.      Inability to maintain discipline in any situation in which employee is responsible for the oversight and supervision of students.

5.      Insubordination or failure to comply with official directives.

6.      Failure to comply with Board policies or administrative regulations.

7.      Failure to meet the District's standards for professional conduct.

8.      Failure to maintain an effective working relationship, or maintain good rapport, with parents, the community, or colleagues.

3.      By e-mail of April 8, 2008, Petitioner's counsel agreed to hold the nonrenewal hearing on May 6, 7, or 8.

4.      At the nonrenewal hearing, on May 6, 2008, Petitioner agreed to allow the board to deliberate in closed session.

5.      At the nonrenewal hearing, neither counsel asked that any documents be admitted into evidence. Each counsel marked multiple exhibits and examined both friendly and hostile witnesses about the documents. The examinations went far beyond proving up the admissibility of a document. Petitioner's counsel made objections to a number of documents and many of these objections were ruled upon. These documents are referred to and attached to the transcript.

6.      Respondent filed the local record on June 12, 2008.

7.      Petitioner filed her objection to the local record on June 20, 2008.

8.      Petitioner failed to maintain discipline for her students.

9.      Petitioner failed to maintain an effective working relationship with her principal.

10.      Petitioner was insubordinate to her principal.

11.      Petitioner failed to competently and efficiently instruct her students.

12.      Petitioner's failings were repeatedly brought to her attention, but Petitioner failed to correct the problems.

Discussion

Petitioner contends Respondent improperly nonrenewed her contract. In particular, Petitioner objects to the exhibits in the local record; contends the hearing was not timely held; and alleges that the decision is not supported by substantial evidence.

<u>Record</u>

Petitioner objects to the inclusion of all of the exhibits in the local record. Petitioner argues that while all of the exhibits were marked that they were not admitted into evidence. Whether or not the documents were admitted into evidence is not dispositive as to the issue of whether they should be a part of the local record. The exhibits are all referred to in the transcript and are attached to the transcript. The local record is to include "the transcripts of proceedings at the local level." 19 TEX. ADMIN. CODE § 157.1072(e)(1). Further, Petitioner's counsel at the local hearing referred to the exhibits as part of the record:

> Well, I guess I would draw your attention to all the written documentations that are in the record here, and is there any parent complaints at all in this pile of documents?

Tr. p.86, l 14-17. Additionally, Petitioner's objection to the local record at the Commissioner's level is untimely. 19 TEX. ADMIN. CODE § 1571072(d)(1). The exhibits, as part of the transcript, are a part of the local record. Whether or not the exhibits constitute evidence is another matter.

<u>Evidence</u>

This nonrenewal was heard exclusively by Respondent's board of trustees. Respondent did not choose to have the case heard by a certified hearing examiner under Texas Education Code section 21.207(b). If the case had been heard by a certified hearing examiner, the Texas Rules of Evidence would apply. TEX. EDUC. CODE § 21.256(d). In fact, a hearing before a certified hearing examiner is conducted as a district court trial without a jury. TEX. EDUC. CODE § 21.256(e). Under such rules, there are

clear standards concerning the admission of evidence. Evidence needs to be formally admitted under those rules. However, since this case was not heard by a certified hearing examiner. These standards do not apply. The question then becomes "how is it determined that a document was admitted or not?" In a nonrenewal not heard by a certified hearing examiner, whether evidence is admitted will be determined by district policy and practice.

In the present case, since there is no board policy, whether evidence was admitted will be determined by practice. Neither counsel asked that a document be admitted into evidence. This occurred despite the fact that each counsel marked multiple exhibits and examined both friendly and hostile witnesses about the documents. The examinations went far beyond proving up the admissibility of a document. Both counsel made objections. If there was no attempt to have these documents considered as evidence, why would a party object to the documents? The objections made during the hearing were carried along to the end of the hearing. At that time, the board President overruled the objections and stated, "So we're going to bring all of that in as evidence and testimony." Tr. at p.149, l 20-21. Petitioner made no objection. After the conclusion of the hearing, the exhibits were presented to the school board. As both counsel treated the exhibits as evidence, they will be considered to be evidence[2]. Further, because there was no objection to treating the documents as evidence at the board hearing, this objection was waived. The Commissioner can usually only decide issues that were raised in the local record. TEX. EDUC. CODE § 21.301(c); *Whitaker v. Marshall Indep. Sch. Dist.*, 40 S.W.3d 176 (Tex. App.-Texarkana 2001, no pet. h.).

---

[2] It would be a wise for a school district to adopt as a policy that specified what evidentiary rules apply when a proposed nonrenewal is heard by the board.

Time of Hearing

Petitioner contends that Respondent failed to hold a timely board hearing as required by Texas Education Code section 21.207(a). Petitioner admits that an extension to the fifteen day timeline was agreed to but argues that the agreement was only for an open hearing and that the notice of the hearing indicated that the hearing would be held in closed session. The hearing except for the board's deliberation was held in open session. Petitioner's counsel specifically agreed to allow the board to deliberate in closed session. Tr. p.13. Even assuming that the agreement for an extension of the fifteen day timeline was solely for an open hearing, Respondent fulfilled the agreement. No violation of Texas Education Code section 21.207(a) is found.

However, Petitioner has failed to prove her claim that the agreement was only for an open hearing. Petitioner has attached certain documents to her Brief and Reply Brief to support this claim but since these documents are not part of the local record they cannot be considered. Further, Petitioner did not object at the hearing that the hearing was being held in violation of Texas Education Code section 21.207(a). Petitioner waived this issue by not objecting. TEX. EDUC. CODE § 21.301(c); *Whitaker v. Marshall Indep. Sch. Dist*., 40 S.W.3d 176 (Tex. App.-Texarkana 2001, no pet. h.).

Open Meetings Act

Related to the timelines argument is the claim that because the board agenda indicated that the nonrenewal would be heard in closed session and the meeting was heard in open session that a violation of the Open Meetings Act occurred and the board's decision should be declared void. Petitioner's sole cite to the Open Meetings Act in her Brief and Reply Brief is a citation to Texas Government Code section 551.141 which only states that, "An action taken by a governmental body in violation of this chapter is voidable." Petitioner fails to indicate which provision of the Open Meetings Act she believes was violated. In addition, Petitioner waived any Open Meetings Act argument by failing to object at the local level. TEX. EDUC. CODE § 21.301. Even if this were a

case brought under the Open Meetings Act, Petitioner waived her argument by not making it at the district hearing. *Bowen v. Calallen Indep. Sch. Dist.,* 603 S.W.2d 229, 236 (Tex.Civ.App.-Corpus Christi 1980, writ ref'd n.r.e.). Further, since the vote to nonrenew Petitioner's contract was taken in open session, the vote to nonrenew Petitioner's contract could not be overturned. *United Indep. Sch. Dist. v. Gonzalez,* 911 S.W.2d 118, 128 (Tex. App.-San Antonio 1995, writ denied).

Substantial Evidence

Petitioner contends that there is not substantial evidence to support the reasons given for the proposed nonrenewal of her contract. Petitioner contends that only the four reasons her principal gave for recommending that the board nonrenew her contract can be used. However, the board's notice of proposed nonrenewal contains eight reasons for proposed nonrenewal. Respondent's Ex. 2. Proof of any of these reasons is sufficient to support the nonrenewal of Petitioner's contract. While Petitioner can point to some evidence in the record that supports her position, under the substantial evidence standard, it is concluded that that there is sufficient evidence to support the nonrenewal of her contract.

Remediation

As the Commissioner has recently reaffirmed in *Anderson v. Tyler Independent School District*, Docket No. 048-R1-0508 (Comm'r 2008):

> . . . there is no right to remediation and that remediation is only required if the teacher's acts by themselves are not sufficient to warrant ending a contract. For a nonrenewal, a district is not required to show good cause. A district is only required to show that pre-established reasons for nonrenewal have been violated. Remediation is much less likely to be required in a nonrenewal case than in a termination case, which requires good cause.

Petitioner has not shown that she was entitled to remediation. Further, Petitioner's failings were repeatedly brought to her attention, but a sufficient response was not made.

19 TEX. ADMIN. CODE § 150.1004(d)

As the Commissioner also pointed out in *Anderson* the PDAS procedures only apply to nonrenewals as specified in Texas Education Code section 21.203. Just because the timeline in the Intervention Plan for Teacher in Need of Assistance had not expired when the proposal for nonrenewal was made does not make the proposal for nonrenewal improper. Petitioner is mistaken in her conclusion that 19 TEX. ADMIN. CODE § 150.1004(d) only allows contract action at the end of the time specified in an intervention plan:

> A teacher who has not met all requirements of the intervention plan for teachers in need of assistance by the time specified may be considered for separation from the assignment, campus, and/or district.

This rule indicates that school districts may take contract action for the failure of a teacher to timely complete an intervention plan. The rule establishes that such a failure normally constitutes good cause for contract action. It does not prohibit a school district from taking contract action until the end of the time specified in the intervention plan. If Petitioner's interpretation were allowed, a teacher who was on an Intervention Plan for Teacher in Need of Assistance would have greater protection from nonrenewal or termination than a teacher who was not.

Conclusion

Respondent's decision to nonrenew Petitioner's contract should be affirmed. The exhibits were admitted as evidence. The hearing was timely held. Substantial evidence supports the reasons for proposed nonrenewal.

Conclusions of Law

After due consideration of the record, matters officially noticed, and the foregoing Findings of Fact, in my capacity as the Commissioner of Education, I make the following Conclusions of Law:

1. The Commissioner of Education has jurisdiction over this case under Texas Education Code section 21.301.

2.     The local record in a Texas Education Code section 21.301 case is to include "the transcripts of proceedings at the local level." 19 TEX. ADMIN. CODE § 157.1072(e)(1).

3.     Petitioner's objection to the local record at the Commissioner's level is untimely. 19 TEX. ADMIN. CODE § 1571072(d)(1).

4.     The exhibits referred to and attached to the transcript are a part of the local record.

5.     In a nonrenewal case heard without a certified hearing examiner, the Texas Rules of Evidence and the Texas Rules of Civil Procedure do not apply.

6.     In a nonrenewal case heard without a certified hearing examiner, whether evidence was admitted will be determined by board policy and practice.

7.     The exhibits in the local record are evidence.

8.     The Commissioner can usually only decide issues that were raised in the local record. TEX. EDUC. CODE § 21.301(c).

9.     Because Petitioner failed to raise an issue as to whether the exhibits constitute evidence at the local level, Petitioner has waived this issue. TEX. EDUC. CODE § 21.301(c).

10.     Texas Education Code section 21.207(a) requires that a nonrenewal hearing be held not later than the 15th date after the board receives a request for hearing unless another date is agreed to.

11.     Respondent did not violate TEX. EDUC. CODE § 21.301(c) because the parties agreed to hold the hearing on May 6, 2008.

12.     By not objecting at the local level to holding the hearing on May 6, 2008, Petitioner waived the arguments that Respondent violated Texas Education Code section 21.207(a). TEX. EDUC. CODE § 21.301(c).

13.    Petitioner has failed to identify a violation of Texas Open Meetings Act by identifying a section of the Act that may have been violated.  By so failing, Petitioner has not shown a violation of the Texas Open Meetings Act

14.    By not making an Open Meetings Act objection at the local level, Petitioner has waived her Open Meetings Act argument.

15.    There is no right to remediation.

16.    Remediation was not required in this case because Petitioner's failings were sufficiently severe to warrant a nonrenewal without remediation.

17.    Since Petitioner's failings were pointed out to her, even if remediation was required, there would not a violation of required remediation.

18.    19 TEX. ADMIN. CODE § 150.1004(d) indicates that school districts may take contract action for the failure of a teacher to timely complete an intervention plan. The rule establishes that such a failure normally constitutes good cause for contract action.  It does not prohibit a school district from taking contract action until the end of the time specified in the intervention plan.

19.    Respondent's decision to nonrenew Petitioner's contract is supported by substantial evidence.

20.    The Petition for Review should be denied.

<u>ORDER</u>

After due consideration of the record, matters officially noticed, and the foregoing Findings of Fact and Conclusions of Law, in my capacity as the

Commissioner of Education, it is hereby

ORDERED that the Petitioner's appeal, be, and is hereby DENIED.

SIGNED AND ISSUED this _____ day of July, 2008.

_____
ROBERT SCOTT
COMMISSIONER OF EDUCATION

# Tab 3

*Dunlap v. Breckenridge Indep. Sch. Dist.,*

*Docket No. 334-R1-692 (Comm'r Educ. 1995)*

| ROCKY DUNLAP | § | BEFORE THE STATE |
|---|---|---|
| | § | |
| | § | |
| V. | § | COMMISSIONER OF EDUCATION |
| | § | |
| BRECKENRIDGE INDEPENDENT | § | |
| SCHOOL DISTRICT | § | THE STATE OF TEXAS |

## DECISION OF THE COMMISSIONER

### Statement of the Case

Petitioner Rocky (Joel) Dunlap appeals the decision of the Breckenridge Independent School District Board of Trustees to nonrenew his contract of employment as a physical education teacher at the end of the 1991-1992 school year.

Katherine L. Moore is the Administrative Law Judge who has been appointed by the Commissioner of Education to substitute for the Hearing Officer originally assigned, Lorraine Yancey. Petitioner is represented herein by Kevin F. Lungwitz of Austin, Texas and Respondent is represented by John R. Cook of Breckenridge, Texas. The Decision is premised upon review of the transcript of the proceedings before the local board of trustees, the exhibits, the pleadings and argument of counsel.

On November 29, 1994, the Administrative Law Judge issued a Proposal for Decision recommending that Petitioner's appeal be GRANTED. No exceptions were filed.

### Findings of Fact

After due consideration of the evidence and matters officially noticed, in my capacity as State Commissioner of Education, I make the following Findings of Fact:

1. Petitioner, Rocky Dunlap was employed as a physical education teacher by Respondent for the 1991-1992 school year on a one year term contract and had been employed in the district for seven years previously.

2. On March 18, 1992, Petitioner was notified by the President of Respondent's Board of Trustees that his employment contract for the upcoming year had been recommended for nonrenewal.

3. The reasons given in the notice letter for the proposed nonrenewal included:

(1)     Any activity, school-connected or otherwise, that because of publicity given it, or knowledge of it among students, faculty, and community, impairs or diminishes the employee's effectiveness in the District; and
(2)     Failure to maintain an effective working relationship, or maintain good rapport, with parents, the community, or colleagues.

4. Petitioner requested a hearing before the board which was heard on May 14, 1992. At the conclusion of the hearing, five board members voted for nonrenewal.

5. Witnesses that presented testimony and evidence to support the nonrenewal for Respondent included the Superintendent, Petitioner's Principal and five parents of students and former students of Petitioner. No students, faculty members or community members testified.

6. The only parent who testified concerning any complaint regarding his/her relationship with Petitioner (and occurring during the 1991-1992 contract-term period) was Mr. Fambro.

7. Although Fambro testified that he had gone to Petitioner on several occasions and had "very agreeable" conversations with him concerning some stomach problems his son was having, he concluded that Petitioner, in his opinion, had lost his effectiveness. He presented, however, no testimony of examples to support that conclusion.

8. Fambro was the only parent-witness who had discussed his complaints or concerns with Petitioner.

9. Petitioner had as many as 70 to 75 students in each of his classes during two full grading periods during the contract year.

10. In late January 1992, Petitioner was reassigned out of the classroom to a position of Learning Media Center Technician, inventorying equipment. A week following his proposed

nonrenewal in March, he was placed on administrative leave because children were disrupting the educational environment by asking questions concerning Petitioner's status.

11. Petitioner's grading procedures were approved by his principal.

12. Petitioner's principal testified that he believed that a group of sixth grade boys intended to "get Mr. Dunlap fired."

13. A petition signed by parents was offered but not accepted into evidence. However, had it been accepted, it was properly objected to as hearsay and cannot constitute evidence tosupport the nonrenewal of Petitioner.

14. The record contains over seventy letters from community members, parents and students indicating their positive feelings for Petitioner and his contributions to education in Respondent's district. No weight is given this exhibit as it was properly objected to as hearsay.

15. Principal Tessen assured Petitioner many times that he was going to recommend the renewal of his contract.

16. In February of 1992 Tessen wrote Petitioner a glowing letter of recommendation indicating that "he would be an asset to any campus because of the expertise, love for kids and dedication to excellence that he consistently demonstrates."

17. Although a portion of Respondent's evaluation instrument speaks to this, Petitioner's evaluations reflected no hint of problems concerning ineffective working relationships with parents, the community or colleagues. His overall rating was "clearly outstanding."

18. Petitioner's principal described him as a teacher who "is a team player, has received excellent appraisals, developed innovative programs, has a love for kids and a dedication to excellence."

The Issue

Petitioner alleges that substantial evidence was not presented by Respondent to support his nonrenewal, that the decision to nonrenew his contract was arbitrary and capricious and that the nonrenewal was a breach of his contract because it violated Texas Educ. Code §21.207.

Discussion

In order to make a determination concerning the propriety of Respondent's nonrenewal of Petitioner's term contract, we must first look to the reasons supporting that decision. Two reasons were given, but the record reflects that no evidence was presented as to one of them, i.e., "any activity, school related or otherwise, that because of publicity given it, or knowledge of it among students, faculty and community impairs or diminishes the employee's effectiveness in the District.[1] Because there was virtually no testimony from members of any of these three groups concerning Petitioner's diminished effectiveness, this reason clearly cannot support his nonrenewal. However, a school district is not required to prove each and every reason for the nonrenewal by substantial evidence. Bagby v. Marlin I.S.D., Docket No. 220-R1-386 (Comm'r Educ. November 1987), Lauden v. Corsicana I.S.D., Docket No. 152-R1-684 (Comm'r Educ. November 1984).

This focuses our inquiry then on the second and remaining reason given to support the nonrenewal: "failure to maintain an effective working relationship, or maintain good rapport, with parents, the community, or colleagues."[2] Because no colleagues or community members testified, we are left to explore Petitioner's relationships with parents in order to determine whether his nonrenewal can be legally sustained.

---

[1] It should be noted that this reason for nonrenewal, taken from Respondent's policies, is written in the conjunctive; i.e., Respondent's burden when relying on this reason is to prove that the nonrenewed educator's effectiveness was diminished because of knowledge of activities on the part of students, faculty and community members.

[2] This reason for nonrenewal is written disjunctively and, as such, Respondent's burden is lessened so that it need only prove that one of the groups referenced presents evidence of Petitioner's failure to maintain an effective working relationship with them.

At the outset, it must be remembered that nonrenewal of a contract of employment is tantamount to a termination or firing in the private sector and as such, has been described in the annuals of labor law as the "capital punishment of the employment world." Therefore, any such decision, because of the taint attendant thereto, must be based upon actual behavior of the employee, not upon innuendo and rumor. No man's livelihood should be taken away unless such action is warranted, based upon **fact**, not fiction.

The "Competent" Evidence Against Petitioner

Because Petitioner had a term contract, the protections of the Term Contract Nonrenewal Act have been extended to him by the Texas Legislature. The total effect of the Act (TCNA) is to ensure that teachers under term contracts will only be subject to nonrenewal when they fail to follow the lawful policies established by their school district. Salinas v. Central Education Agency, 706 S.W.2d 791 (Tex. Civ. App.-Austin, 1986, writ ref'd). Moreover, appeals to the Commissioner of Education arising under the TCNA are confined to a substantial evidence review of the record developed before the local board. See Tex.Educ.Code Ann. §21.207(a). Accordingly, the decision below is presumed to be valid and will be sustained unless the record shows there to be no rational basis for the board's action. Texas Employment. Commission v. Riddick, 485 S.W.2d 849, 852 (Tex. Civ. App.-Austin, 1972, no writ.); Republic Bankers Life Ins. Co. v. Morrison, 487 S.W.2d 373,375 (Tex. Civ. App.-Texarkana, 1972, no writ).

However, what is and what is not "competent" evidence is determined by rules of evidence and decisions of the Commissioner of Education. While the Texas rules of Evidence do not apply to local hearings, they do apply when the record is reviewed on appeal. Gipson v. Ore City I.S.D., Docket No. 178-R1-690 (Comm'r Educ. October 1992). Accordingly, any hearsay, properly objected to at the local level is to be rightfully excluded. Moreover, the Commissioner has indicated previously that, in order to nonrenew an educator's term contract, it must be for

behaviors occurring during the term of <u>that</u> contract.  <u>Lucas v. Channelview I.S.D.</u>, Docket No. 175-R1-785 (Comm'r Educ. November 1986).  Any hearsay evidence or evidence then concerning acts of Petitioner <u>prior to the 1991-1992 school year</u> must be eliminated from consideration as support for Respondent's decision to nonrenew.  The logic behind these two rules of law are obvious.  In order to rely on the word of others, their testimony must be trustworthy and based upon personal knowledge, not a mere repeat of what someone else observed or experienced.  The rules concerning hearsay were designed specifically to guard against such evidence.  Moreover, the consideration of evidence related solely to the time frame of the contract at issue results from the conclusion that an educator's previous years' performances have <u>already</u> been passed upon (as evidenced by the extension of previous contracts) and therefore cannot be accumulated to establish a basis for nonrenewal when none exists during the current contract term.  Keeping these overriding rules in mind, then, we turn to the evidence offered to support Petitioner's nonrenewal.

<u>Evidence of Petitioner's "Failure to Maintain Effective Working Relationships with Parents"</u>

Superintendent McMillan was the witness utilized to offer numerous documents which allegedly supported the reasons for nonrenewal.  Unfortunately for Respondent, many of those exhibits were either irrelevant to the Petitioner's performance during the 1991-1992 school year or were rank hearsay.  Arguably, the only documentary evidence to support Respondent's nonrenewal of Petitioner for his alleged inability to maintain a good relationship with parents were Respondent Exhibits 7, 8, 9 and 24.  Each of these exhibits however suffers from some inescapable deficiencies.

Exhibit 7 are notes which Superintendent McMillan testified he made concerning meetings with three different parents in December 1991, relating to various aspects of Petitioner's alleged behavior including his grading for absence and using "group" discipline. This exhibit was objected to on the grounds of hearsay and no proper predicate was laid for any

plausible exception.  Therefore the exhibit is not considered proper evidence to support

Petitioner's nonrenewal.

Exhibit 8 is a copy of a petition, ostensibly signed by community members, demanding

Petitioner's dismissal that was presented to the board of trustees just prior to its February 17,

1992 board meeting.  It makes random allegations against Petitioner including that he engaged in

"inequitable grading, irregular and improper disciplinary actions and repeated confrontations

with parents and students."  However these allegations, standing alone, cannot support the

nonrenewal because Respondent put <u>no evidence on</u> to support these bare accusations.  Not a

single parent testified that he/she had had any confrontations with Petitioner and, in fact, of those

that testified, the only one who had even spoken to Mr. Dunlap candidly testified that his

experience was "pleasant."  Moreover, the record is devoid of any evidence of improper

disciplinary actions and Petitioner's grading practices were sanctioned by his principal.  Finally,

there is no evidence in the record authenticating this document, its author is not identified and

many of the signatures appear to be suspect.

Exhibit 9 purports to be a handwritten note from a student alleging that Petitioner

"pinched" her.  Its evidentiary value however, is limited, in that Petitioner was not nonrenewed

for pinching a student, even if Respondent had proved that Petitioner actually did so - which it

did not.

Finally, Exhibit 24 purports to be notes of various conferences Principal Tessen had

concerning parental complaints regarding Petitioner.  Although Respondent attempted to enter

these as a business record exception to the hearsay rule, it failed to establish the proper predicate

as to contemporaneousness with the event reflected.  Further, Respondent has the burden to

establish that these events occurred during the contract year in question (i.e., 1991-1992) and

neither the document nor the testimony reflects the year within which these conferences occurred. Finally, the record fails to reflect that this document was ever accepted into evidence. [3]

Turning now to the testamentary evidence offered to support Respondent's nonrenewal, Petitioner's own principal described him as "a good teacher" and "an excellent teacher" who "developed several innovative programs, was a team player and would always give his very best. He indicated that most of Petitioner's students enjoyed their classes and he never personally witnessed any disrespect on Petitioner's part toward his students. In fact, in support of Tessen's belief that some sixth-grade boys were intent upon getting Petitioner fired, he indicated that he never recorded a single complaint from any fourth or fifth grade students concerning Petitioner's performance or programs. Furthermore, Tessen himself admitted to assuring Petitioner numerous times that he was going to recommend renewal of Petitioner's contract. [4]

Of the five parents who testified, arguably only three of them had any complaints related to Petitioner during the 1991-1992 school year. The record is inconclusive concerning when the issues referred to by Hill and Spencer occurred, but even assuming that they did occur during that time frame, they do not represent evidence of failure to maintain rapport with parents. And, as previously indicated, of those three parents, only Fambro had even had any conversation with Petitioner which he described that experience as "pleasant."

Finally, Superintendent McMillan testified, but had no actual first-hand experiences to relate, concerning Petitioner's effectiveness in dealing with parents. He merely testified to interactions he had had with them and their hearsay complaints.

Applying the Law to These Facts

---

[3] Even if the events did occur during the 1991-1992 contract term, Tessen characterized these complaints as "minor." Additionally, the exhibit reflects that after this time, Tessen "documented more severe accusations." However, since no such documentation was produced at the hearing, from an evidentiary standpoint, it must be concluded that none occurred.

[4] There is no direct evidence concerning why Tessen reneged on his promises to Petitioner; however, the inference in the record is that he succumbed to parental pressure.

Petitioner's counsel cites Seifert v. Lingleville Independent School District, Docket No. 174-R1a-782 (Comm'r Educ. January 1983) and 692 S.W.2d 461 (Tex. 1985) for the proposition that adverse community or parental "perceptions" is an illegal reason for nonrenewal when contrasted with excellent teaching performance. Like Seifert, Petitioner herein had no control over parental "perceptions" gained from the wagging tongues of disgruntled children. It would be a sad day for education in this state if any teacher's contract renewal hinged upon his/her ongoing "popularity." Being a educator is simply not a popularity contest. The educator's job is to teach children in various subjects and in character building qualities of self discipline, citizenship and responsibility. Many times those lessons are not welcomed and do not come easily. Be that as it may, a teacher's obligation to maintain a good rapport with parents could not conceivably contemplate keeping every single parent and student happy all of the time. What is required is that when they fall short in this department, it is to be brought to their attention and steps should be taken (both by the teacher and the administration if necessary) to either justify the conduct or correct it. Petitioner herein was never put on notice that he was in danger of losing his position because too many parents were complaining about him or that he was guilty of doing anything justifying such complaints that needed correction. Just as in Seifert where there was a "perception" of incompetency, here there was simply a "perception" of ineffectiveness.

The Commissioner said it best in Seifert when he stated:

> The TCNA does not contemplate such a roundabout method of nonrenewing a teacher, it was not enacted to allow the nonrenewal of a competent (or excellent) teacher based on second hand accounts of the tales of children which grow more exaggerated with each retelling. Seifert at 5.

The credible evidence in this case does not suggest nor allow a reasonable inference, in reality, that there actually was a lack of rapport between Petitioner and parents sufficient to support his nonrenewal. Where the evidence adduced at the local hearing does not support the specific reasons of which the teacher was given written notice, the Commissioner of Education may substitute his judgment for that of the board of trustees. 19 TAC §157.1071(g)(4), Lewis v.

Columbus I.S.D., Docket No. 260-R1-491 (Comm'r Educ., subsequently deism's June 1993).

Respondent's nonrenewal of Petitioner's contract cannot be sustained.

Conclusions of Law

After due consideration of the record, matters officially noticed, and the foregoing Findings of Fact, in my capacity as State Commissioner of Education, I make the following Conclusions of Law:

1.      The Commissioner of Education has jurisdiction to hear this case.

2.      Petitioner's nonrenewal for engaging in "any activity, school related or otherwise, that because of the publicity given it, or knowledge of it among students, faculty and community, impairs or diminishes the employees effectiveness in the District" is not supported by substantial evidence.

3.      Petitioner's nonrenewal for his alleged "failure to maintain an effective working relationship, or maintain good rapport with parents, the community, or colleagues" is not supported by substantial evidence.

4.      Respondent's decision to nonrenew Petitioner's contract for the above two reasons was arbitrary, capricious and unlawful.

5.      Petitioner's appeal should be GRANTED; Petitioner is entitled to employment for the subsequent school year the same professional capacity.

O R D E R

After due consideration of the record, matters officially noticed, and the foregoing Findings of Fact and Conclusions of Law, in my capacity as State Commissioner of Education, it is hereby

ORDERED that Petitioner's appeal be, and is hereby, GRANTED and

FURTHER ORDERED that Petitioner is entitled to employment in the same professional capacity for the succeeding school year.

#334-R1-692                                           10

SIGNED AND ISSUED this _____ day of _____, 1995.


                                                   _____
                                                   LIONEL R. MENO
                                                   COMMISSIONER OF EDUCATION

# Tab 4

*Freeman v. Winona Indep. Sch. Dist.,*

*Docket No. 160-R1-785 (Comm'r Educ. 1986)*

DOCKET NO. 160-R1-785

| | | |
|---|---|---|
| WALTER FREEMAN | § | BEFORE THE STATE |
| | § | |
| | § | |
| V. | § | COMMISSIONER OF EDUCATION |
| | § | |
| WINONA INDEPENDENT | § | |
| SCHOOL DISTRICT | § | THE STATE OF TEXAS |

DECISION OF THE COMMISSIONER

Statement of the Case

Walter Freeman, Petitioner, brings this appeal, pursuant to the Term Contract Nonrenewal Act (TCNA), Tex. Educ. Code Ann. §§21.201 - .211 (Vernon Supp. 1984), from the decision of the Board of Trustees of Winona Independent School District to not renew his term contract when it expired at the end of the 1984-85 school year.

Petitioner is represented before the State Commissioner of Education by Larry Daves, Attorney at Law, Tyler, Texas. Respondent is represented by Jack Jackson, Attorney at Law, Tyler, Texas. The Hearing Officer appointed by the State Commissioner of Education for the purpose of entering a Proposal for Decision is Mark W. Robinett.

On November 20, 1985, the Hearing Officer issued a Proposal for Decision recommending to the State Commissioner of Education that Petitioner's appeal be denied. Our records reflect that a copy of the Proposal for Decision was received by both parties. Petitioner filed Exceptions to the Proposal for Decision on December 11, 1985. Respondent filed a Reply to Petitioner's Exceptions to Proposal for Decision on December 27, 1985.

Findings of Fact

After due consideration of the evidence and matters officially noticed, in my capacity as State Commissioner of Education, I make the following Findings of Fact:

1. During the 1984-85 school year, Petitioner was in his seventh year of employment

at Winona ISD as a classroom teacher. The terms of his employment were governed by a written term contract. (Plaintiff's Ex. P-1). Paragraph 13 of Petitioner's 1984-85 contract reads, in its entirety, as follows:

13. Special arrangements and/or conditional requirements (list below):

   a. Improvement of classroom management. (Attend appropriate workshops as designated.)
   b. Improvement of teacher-student interaction.
   c. Implementation of student classroom guidance through a fair and consistent method of leadership.
   d. Improvement of personal self-concept and self-image as a teacher.
   e. Implementation of improved motivational techniques.
   f. Improvement of communications skills with parents.

2. On March 21, 1985, the president of the Board of Trustees sent a letter to Petitioner notifying Petitioner that the superintendent had recommended that Petitioner's employment not be renewed for the succeeding school year. (Pl. Ex. P-3). The recommendation was made for the following reasons:

1. A significant lack of student progress.

2. Deficiencies pointed out in observation reports, evaluations, supplemental memoranda, or other communications.

3. Failure to fulfill duties or responsibilities.

4. Incompetency or inefficiency in the performance of required or assigned duties.

5. Inability to maintain discipline in the classroom or at assigned school-related functions.

6. Reasons specified in individual employment contracts reflecting special conditions of employment.

7. Insubordination or failure to comply with official directives.

8. Failure to comply with reasonable District requirements regarding advanced coursework or professional improvement and growth.

3. By letter dated April 3, 1985, Petitioner requested a hearing on the matter before the Board of Trustees. (Pl. Ex. P-4).

4. A hearing before the Board of Trustees was conducted on May 21, 1985.

#160-R1-785                                    2

5. At the hearing, Petitioner testified to the following:

(a) He received no indication from his principal prior to March 8, 1985 that he had any teaching "problems," although he had received suggestions for improvement in certain areas. Among the suggestions were (i) that he not require his students to make sure their desks were clear, but that trash be left for the janitors to clean up, and (2) that he should increase the number of tests he gave. He followed these suggestions. (Tr. 25-29, 209, 211).

(b) He knew at the end of the 1983-84 school year that the administration perceived him to have some problem areas. The primary area of concern was discipline. (Tr. 34, 195).

(c) At the end of the 1983-84 school year, he went to Coach Tipps and Principal Zachary for assistance. He also purchased two books on classroom discipline, borrowed one or two books from his principal, and spent the summer going through them. (Tr. 190).

(d) His principal had not evaluated him in good faith. He had not made recommendations for improvement and had, in fact, on October 3, 1984, told Petitioner to "keep up the good work." (Tr. 35-36, 200).

(e) On his self-evaluation for the 1983-84 school year, Petitioner rated his performance as "clearly outstanding" in all thirty-six categories listed on the evaluation instrument. (Tr. 38-41; Pl. Ex. P-1). This was his honest and candid opinion of his rating as a teacher. (Tr. 40).

(f) His 1983-84 evaluation contained many favorable comments by his principal in categories that were rated negative in the 1984-85 school year. (Tr. 198-99).

(g) The high number of failures in his classes was due to students who "refused to do work, to complete homework assignments that were mainly given as drill practice." (Tr. 200).

(h) When Principal Kendall made a recommendation that Petitioner make a particular change, Petitioner made that change immediately. (Tr. 210).

(i) Petitioner was never given "diagnostic or prescriptive remedies" for correcting his problems. (Tr. 221-22).

(j) Petitioner's lesson plans were filled out as instructed by Principal Kendall. Further, they were commented on favorably by substitute teachers. (Tr. 228-29; Freeman Ex. 7).

(k) His students improved as the year progressed, even if their grades did not reflect improvement. (Tr. 231, 257).

#160-R1-785                    3

(l) He occasionally went to the office during class time because the restroom was in the office and to run off additional copies of papers when his students ran into difficulties.

6. Ed Kendall, junior high school principal, testified as follows:

   (a) The 1984-85 school year was his first year at Winona ISD.  (Tr.  96).

   (b) He met with Petitioner for the first time in the principal's office on July 25, 1984.  (Tr.  97).  At that time, he made Petitioner aware that he expected Petitioner to correct the items listed on his contract for the 1984-85 school year.  (Tr.  98-99).

   (c) School policy required any discipline outside a teacher's classroom to be done through the principal rather than directly by the teacher.  However, on one occasion, Petitioner required certain students to clean up the cafeteria without the principal's knowledge.  (Tr.  105-06, 152).

   (d) There was a high rate of failing grades in Petitioner's classes at the beginning of the year, and the rate became higher as the year progressed.  (Tr.  107-08, 111, 276).  When asked about the situation, Petitioner's explanation was that the poor grades reflected the students' lack of ability or unwillingness to do their homework.  (Tr.  108-09, 117).

   (e) During his observations of Petitioner, the principal observed that there was a lack of student enthusiasm and student interest.  (Tr.  111-12).  Further, Petitioner's attitude toward his students was "nonenthusiastic." (Tr.  112).

   (f) During the year, the principal "at no time saw that [Petitioner] had adopted [sic] any of his curriculum to the individual needs of any of the students or groups of students to fit any of their individual or group needs or interests. (Tr.  115-16, 160).

   (g) Frequently, the principal noticed Petitioner outside of his classroom during class time; e.g., in the office or lounge area running off copies.  (Tr.  118-19).

   (h) Overall, the principal's perception was that student discipline in Petitioner's classroom was "below satisfactory." (Tr.  119-20).

   (i) The principal observed Petitioner's class on October 3, 1984, and gave Petitioner a verbal report of his observation.  He did not tell Petitioner "to keep up the good work." (Tr.  145).

7. Ed Zachary, principal at Winona High School, testified as follows:

   (a) He observed and evaluated Petitioner's performance in January and February

1985.  (Tr.  177; Pl.  Ex.  P-9).

(b) Petitioner's lesson plans contained no reference to what types of problems were to be assigned to the students or if any problems were to be assigned.  (Tr.  179-80).  Further, the plans were coded in a manner that would have been of no assistance to a substitute teacher.  (Tr.  180, 186).

Discussion

Petitioner first claims that the March 21, 1985 notice letter (See Finding of Fact No. 2) is "legally insufficient for failure to specify the actual grounds relied upon by the administration to support the nonrenewal." There is no indication in the record, however, that Petitioner advised the school district of any alleged deficiencies in the notice which prevented him from adequately preparing his response to the allegations in the notice, thus giving the district the opportunity to correct those deficiencies prior to the date of hearing.  Had such a request been made, and had the district failed to correct any actual deficiencies, the Commissioner would be in a position to substitute his judgment for that of the district's board of trustees.  See 19 Tex.  Admin.  Code §157.64(g)(3).  Because no such request was made, any complaints about the sufficiency of the reasons set forth in the notice to Petitioner of his proposed nonrenewal must be considered waived.

Petitioner's next complaint is as follows:

The Board in reaching its decision relied upon evidence of petitioner's rigorous grading practices and the large number of students who as a result of his grading practices, failed petitioner's courses.  Petitioner was not advised in the notice of non-renewal that his grading practices were a basis for the non-renewal.  Even if petitioner had been given proper notice, such reliance is illegal and violates petitioner's first and fourteenth Amendment rights to academic freedom and due process of law.

It has been held that the grades assigned by a teacher are not ordinarily indicative of a teacher's level of competence, because they may reflect nothing other than a particular teacher's standards.  McLean v.  Quanah ISD, No.  178-R1a-782, pp.  5-6 (Comm.  Educ., May 1984); Seifert v.  Lingleville ISD, No.  174-R1a-782, p.  6 (Comm.  Educ., Jan. 1983).  However, it has also been stated that grades may have significance if the number of failing grades increases from one grading period to the next, as an indication that a teacher's students are not making progress even under that teacher's own standards.

#160-R1-785                                        5

McLean, at p. 6. In the present case, the grades assigned by Petitioner were used for the latter purpose. As such, they were properly admitted and considered by the Board of Trustees as _evidence_ of the alleged lack of progress, rather than as an independent _reason_ for nonrenewal.

Petitioner also claims that the Board's reliance on his students' grades violated his rights to academic freedom and due process of law. How academic freedom and due process are implicated, however, is not made clear and is not readily apparent. In the absence of any argument or authority in support of these claims, they need not be further addressed.

Petitioner also complains that "[t]he district impermissably [sic] relied on hearsay evidence to the injury of Petitioner." However, the Board's decision is adequately supported by nonhearsay evidence. In addition, an objection to hearsay must be made at the local hearing at the time the hearsay statement is made in order to deny the hearsay probative value. TEX. R. EVID. 802.

Finally, Petitioner claims that the decision to nonrenew his contract "is not supported by substantial evidence, is arbitrary and/or capricious and contrary to law." In the absence of specific allegations to support a conclusion that the decision was arbitrary and capricious or, in some unspecified manner, contrary to law, these allegations will not be considered. 19 Tex. Admin Code §157.44. As for Petitioner's substantial evidence allegation, it is concluded, from the relevant and material evidence presented at the hearing, that the Board of Trustees could have reasonably concluded that Petitioner's employment should not be renewed for the reasons set forth in the notice of his proposed nonrenewal - - particularly as they relate to student progress, motivating students, and student discipline. (See Findings of Fact Nos. 1 and 2). Substantial evidence, after all, need not be much evidence. Although "substantial" means more than a mere scintilla, or some evidence, it is less than is required to sustain a jury verdict being attacked as against the great weight and preponderance of the evidence. Hegar v. Frisco ISD, No. 120-R1-584, pp. 6-7 (Comm. Educ., Feb. 1985).


## Conclusions of Law

After due consideration of the record, matters officially noticed, and the foregoing Findings of Fact, in my capacity as State Commissioner of Education, I make the following Conclusions of Law:

1.  Petitioner waived any complaint about the sufficiency of the grounds set forth in the notice to him of his proposed nonrenewal, because he failed to request a more specific statement when he requested a hearing on the matter.

2.  The consideration by the Winona Independent School District's Board of Trustees of the grades assigned by Petitioner was proper and appropriate for the purpose of demonstrating a lack of progress throughout the year by Petitioner's students even under Petitioner's own standards.

3.  Petitioner has failed to adequately raise in his Petitioner for Review any issue concerning academic freedom and due process of law in connection with the grades assigned by him to his students.

4.  The decision by the Board of Trustees not to reemploy Petitioner for the 1984-85 school year was supported by substantial evidence.

5.  Petitioner has failed to adequately raise any issue concerning his general claim that the decision of the Board of Trustees was "arbitrary and/or capricious and contrary to law."

6.  Petitioner's appeal should be DENIED.

## O R D E R

After due consideration of the record, matters officially noticed, and the foregoing Findings of Fact and Conclusions of Law, in my capacity as State Commissioner of Education, it is hereby

ORDERED that Petitioner's appeal be, and is hereby, DENIED.

SIGNED AND ENTERED this 7th day of July, 1986.

_____

#160-R1-785                                                 7

W.  N.  KIRBY
COMMISSIONER OF EDUCATION

# Tab 5

*Gipson v. Ore City Indep. Sch. Dist.,*

*Docket No. 178-R1-690 (Comm'r Educ. 1992)*

#178-R1-690                    --
DOCKET NO. 178-R1-690


GRAYCE GIPSON                   +           BEFORE THE STATE
                               +
                               +
V.                             +        COMMISSIONER OF EDUCATION
                               +
ORE CITY INDEPENDENT       +
SCHOOL DISTRICT            +           THE STATE OF TEXAS

DECISION OF THE COMMISSIONER

Statement of the Case

     Petitioner appeals Respondent's decision to nonrenew
her teaching contract at the close of the 1989-90 school
year.  Petitioner contends Respondent decision was
arbitrary, capricious and not supported by substantial
evidence.
     Resolution of this appeal is based on a review of the
local record established before Respondent's board of
trustees supplemented by Petitioner's Brief on Lack of
Substantial Evidence and Respondent's Brief of Substantial
Evidence.  Lorraine J. Yancey is the Hearing Officer
appointed by the State Commissioner of Education.
Petitioner is represented by Kevin F. Lungwitz, Attorney at
Law, Austin, Texas.  Respondent is represented by John S.
Aldridge, Attorney at Law, Austin, Texas.
     The record shows Petitioner failed to follow
Respondent's directives and that Respondent's subsequent
contract nonrenewal decision was supported by substantial
evidence.
     On August 3, 1992, the Hearing Officer issued a


Proposal for Decision recommending that Petitioner's appeal
be denied.  Exceptions to the Proposal for Decision were
timely filed by Petitioner and Respondent; no reply was
filed.

Findings Of Fact
     After due consideration of the evidence and matters
officially noticed, in my capacity as State Commissioner of
Education, I make the following Findings of Fact:
     1.  At all times relevant to this appeal, Petitioner
was employed by Respondent as a vocational home economics
teacher pursuant to a one-year non-probationary term
contract for the 1989-90 school year.  (Local EX. A6; TR.
335).
     2.  By letter dated March 26, 1990, Petitioner received
notice of Respondent's proposed nonrenewal of her employment
contract.  Respondent provided Petitioner with the following

reasons:

(1) Incompetency or inefficiency in the performance of required or assigned duties;
(2) Failure to maintain an effective working relationship, or maintain good rapport, with parents, the community, or colleagues;
(3) Insubordination or failure to comply with official directives;
(4) Failure to meet the Districts' standards of professional conduct;
(5) Misrepresentation of facts to a supervisor or other District official in the conduct of District business.
(Local EX. A2).

3. On April 30, 1990, Petitioner received an evidentiary hearing before Respondent's board of trustees. The board voted to nonrenew Petitioner's employment contract. (Local Record).

4. Petitioner failed to (1) timely submit training plans for "MOCT," a cooperative training program; (2) complete the Teacher's Assessment of Individual Goals and Outcomes "TAIGO" due October, 1989; and (3) visit and document visits to off-campus student employment/training sites during the 1989-90 school year.

5. Respondent presented no evidence that Petitioner was incompetent in the performance of required or assigned duties. For the 1989-90 school year, Respondent rated Petitioner's classroom performance as "meets expectations." (Local Ex. E3).

6. Respondent presented no evidence that low enrollment in Petitioner's homemaking class during the 1989-90 school year was due solely or partially to Petitioner's incompetency or inefficiency in the performance of required or assigned duties. (Record).

7. Respondent presented no evidence that Petitioner misrepresented facts to a supervisor or other District official in the conduct of District business. (Record).

8. Respondent presented insufficient evidence that Petitioner failed to meet the Districts' standards of professional conduct. (Record).

9. Respondent presented no evidence that Petitioner failed to maintain an effective working relationship, or maintain good rapport, with parents, the community. (Record).

10. Respondent presented a scintilla of evidence that Petitioner failed to maintain good rapport with one teacher. (Record).

Discussion

Petitioner must prove that Respondent's nonrenewal of her teaching contract is unsupported by substantial evidence. "Substantial evidence" is more than a mere

scintilla or some evidence. 1 Mollinedo v. Texas Employment Commission, 662 S.W. 2d. 732,735 (Tex. Civ. App. - Houston [1st Dist]). There is more than a scintilla if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds as to the existence of a vital fact. Kindred v. Con/Chem, Inc., 650 S.W. 2d 61, 63 (Tex. 1983). Additionally, the school district is not charged with the burden of providing substantial evidence in support of each and every reason for its nonrenewal decision.

Nonrenewal of Term Contracts

The board of trustees of each school district may choose not to renew the employment of any teacher employed under a term contract effective at the end of the contract period, but must establish policies establishing reasons for the nonrenewal. See Texas Education Code +21.203(a) & (b). Petitioner was employed by Respondent as a vocational home economics teacher for eleven years. Respondent contends Petitioner failed to: (1) timely submit training plans for the "MOCT," a cooperative training program; (2) complete the Teacher's Assessment of Individual Goals and Outcomes "TAIGO" due in October, 1989; (3) visit and document visits to off-campus student employment/training sites.

Respondent presented a scintilla of evidence that Petitioner failed to develop good rapport with at least one of her colleagues. 3 While the Texas Rules of Evidence do not apply to local hearings, they do apply when the record is reviewed on appeal. Personal Knowledge - Petitioner's cross-examination of a high school counselor, who vigorously lambasted the effectiveness of the homemaking program as taught by Petitioner, established that the counselor had never observed Petitioner's classroom and had never initiated a conference with Petitioner or Petitioner and a student to reconcile problems. (TR. 243-250). Hearsay - As evidence that Petitioner failed to maintain an effective working relationship, or maintain good rapport, with colleagues, Respondent offered the testimony of Cornelia Wilson, a second year, non-certified probationary teacher. Wilson testified that two students said Petitioner referred to Cornelia Wilson, who was eight-months pregnant, as a "big-bellied b**** and a white motherf***er." Petitioner denied making the statement. The students were not available for cross examination by Petitioner. The use of said language in the presence of students is so damaging that Respondent's failure to have the students testify is surprising. Because Cornelia Wilson's testimony was objected to as hearsay, it will not be held to be evidence of Respondent's cause for nonrenewal.

However, it is Petitioner's admission that she did not develop training plans and failed to visit and document off-campus visits to employers that clearly substantiates Respondent's decision to nonrenew her employment contract.  When there is enough evidence in the record to constitute substantial evidence in support of any basis for Respondent's decision, it must stand.  Palasota v. Brian ISD, Docket No. 131-R1-685 (Comm'r Educ. 1987).  Thus, it is ordered that Petitioner's appeal be DENIED.

Conclusions of Law

After due consideration of the record, matters officially noticed, and the foregoing Findings of Fact, in my capacity as State Commissioner of Education, I make the following Conclusions of Law:

1.  The Commissioner of Education has jurisdiction over this appeal under Tex. Educ. Code ++11.13 and 21.207.

2.  Substantial evidence supports Respondent's decision to nonrenew Petitioner's employment contract due to Petitioner's failure to comply with official directives; specifically, Petitioner's failure to timely submit training plans, to visit student employment sites, and to document visits to off-campus student employment/training sites.

3.  Respondent's nonrenewal of Petitioner's term contract of employment at the close of the 1989-90 school year was supported by substantial evidence and was neither arbitrary, capricious nor unlawful.

4.  Petitioner's appeal should be DENIED.

O R D E R

After due consideration of the record, matters

officially noticed, and the foregoing Findings of Fact and Conclusions of Law, in my capacity as State Commissioner of Education, it is hereby

ORDERED that Petitioner's appeal be, and is hereby, DENIED.

SIGNED AND ISSUED this ___ day of _____, 1992.

_____
LIONEL R. MENO
COMMISSIONER OF EDUCATION

# Tab 6

*Green v. Brazosport Indep. Sch. Dist.,*

*Docket No. 083-R1-0512 (Comm'r Educ. 2012)*

| ROBERT GREEN | § | BEFORE THE |
|---|---|---|
| | § | |
| | § | |
| | § | |
| V. | § | COMMISSIONER OF EDUCATION |
| | § | |
| | § | |
| BRAZOSPORT INDEPENDENT | § | |
| SCHOOL DISTRICT | § | THE STATE OF TEXAS |

## DECISION OF THE COMMISSIONER

Petitioner, Robert Green, complains that Respondent, Brazosport Independent School District, improperly nonrenewed his term contract. Joan Howard Allen is the Administrative Law Judge appointed by the Commissioner of Education to hear this cause. Petitioner is represented by Victoria Plante-Northington, Attorney at Law, Houston, Texas. Respondent is represented by David B. Hodgins, Attorney at Law, Houston, Texas.

### Findings of Fact

It is concluded that the following findings are established by the record in this case:

1. Respondent Brazosport Independent School District board of trustees voted to nonrenew Petitioner Robert Green's term contract at the end of its term on April 30, 2012 and notified Petitioner in writing of its decision on May 2, 2012. (T. 194-197; Local Record (hereinafter "LR"), Ex. E).

2. The notice of proposed nonrenewal identified a number of performance-based issues, including, but not limited to, the following:

(a) failure to comply with official directives;
(b) deficiencies pointed out in observation reports, appraisals or evaluations, supplemental memorandums, or other communications;
(c) failure to fulfill duties or responsibilities;
(d) incompetency or inefficiency in the performance of duties;
(e) failure to comply with Board policies or administrative regulations.

(f) failure to comply with reasonable District requirements regarding professional improvement and growth; or
(g) insubordination.[1]

(LR, Ex. C, Tab 30).

3. In his Petition for Review, filed in letter format, Petitioner raised the following issues:

(a) Petitioner "challenges the ruling on substantive and procedural grounds" without identifying the specific rights that are alleged to have been violated;
(b) Petitioner "was not permitted to testify;"
(c) Petitioner "was not granted additional time to present his case;"
(d) Petitioner was "denied due process" by not being given additional time which limited his case in chief;
(e) Petitioner's witness was not permitted to testify;
(f) the board failed to consider that the performance issues were identified two weeks after Petitioner filed an Equal Opportunity Employment Commission (EEOC) complaint against the district;
(g) Petitioner was engaged in protected activity for which the district could not nonrenew his term contract;
(h) Petitioner is entitled to attorneys' fees and expenses.

(Pet. Rev.)

4. Petitioner raised three issues in his brief that were not presented to the board of trustees or included in his Petition for Review:

(a) the use of a neighboring district's general counsel in the nonrenewal hearing, alleging a violation of TEX. EDUC. CODE § 21.207;
(b) failure to follow the Texas Rules of Civil Evidence, depriving Petitioner of a fair and meaningful hearing;
(c) lack of substantial and credible evidence to support the board's decision.

(Pet. Brief).

5. At the hearing before the board of trustees, the general counsel of an adjoining district acted as legal counsel to the board, which heard and decided the appeal. (LR, Ex. B, T. 4-6). Petitioner did not object to the board's legal counsel at the hearing or in his Petition for Review. (Record). The parties were allotted two hours each to present opening statements, to examine and cross-examine witnesses and to present a

---

[1] The "good cause" reason need not be addressed as seven independent reasons for nonrenewal are supported by the record.

083-R1-0512                    -2-

closing statement. (LR, Ex. B; T. 8). Petitioner's counsel did not object to the allotment at the time of announcement and did not question the limit until she was notified that thirty-six minutes remained of Petitioner's two hour time limit. (T. 136-137). Petitioner was left with two minutes for his case in chief at the conclusion of the district's presentation. (T. 188-189). Petitioner's counsel was notified throughout the hearing of the time remaining for Petitioner. (*See, e.g.,* T. 136-137). Petitioner did not object to the inapplicability of the Texas Rules of Civil Evidence at the hearing or in his Petition for Review. (Record). Petitioner did not present his argument that the board's decision lacked substantial and credible evidence to support its decision at the local level or in his Petition for Review (Record).

6.     Petitioner filed a Charge of Discrimination with the EEOC on August 5, 2011. (LR, Tab C, BISD/GREEN000330). The district received the Charge on August 18, 2011. (LR, Tab C, BISD/GREEN000329). Petitioner's principal and immediate supervisor first learned of the Charge on March 5, 2012, when Petitioner notified her. (LR, Ex. B, McMillan T. 73-75; Ex. C, Tab 28).

7.     Petitioner's principal met with Petitioner on August 15, 2011 to discuss Petitioner's action to secure approval for leave without informing the principal of a mandatory district-wide meeting Petitioner was scheduled to attend at the same time. Petitioner did not secure a substitute and the school was unrepresented at the meeting. (LR, Ex. B, McMillan T. 31-40; Ex. C, Tabs 6-7). Petitioner was loud, aggressive and disrespectful toward the principal, who directed him to behave appropriately in compliance with policy DH. (*Id.*). In a follow-up meeting with assistant superintendents on August 23, 2011, Petitioner continued to refuse to accept or discuss his supervisor's directives and left abruptly. He was placed on two weeks of paid administrative leave. (LR, Ex. B, McMillan T. 40-48, Massey T. 138-144; Ex. C, Tabs 10-A, 10-B, 10-C).

8.     Upon his return, Petitioner refused to properly perform his job duties regarding students, student discipline and student home visits, violated the school's dress

and tardy/attendance policies, and was disrespectful to the principal. (LR, Ex. B, McMillan T. 49-60; Ex. C, Tabs 10-A, 10-B, 10-C, 14-A, 14-B, 15-A, 15-B, 15-C).

9. After receiving a negative performance appraisal in January, 2012, and failing to improve, Petitioner refused and failed to follow the required Performance Improvement Plan to address continued disorganization, professional demeanor, communication and tone. (LR, Ex. B, McMillan T. 54-60, 69-71; Ex. C, Tabs 15-A, 15-B-15-C, 20-30).

10. On March 5, 2012, the principal noted Petitioner's failure to perform his job duties involving student discipline in which he incorrectly referred these matters to the principal. (LR, Ex. B, McMillan T. 72-73; Ex. C, Tab 28). In their conference, Petitioner notified the principal that he had sent his documents to the EEOC, which was the principal's first notification of the Charge of discrimination. (*Id.*). On March 6, 2012, by written memorandum, the principal notified Petitioner that he had failed to comply with any aspect of the Performance Improvement Plan. (LR, Ex. B, McMillan T. 75-76; Ex. C, Tab 29).

Discussion

In his brief, Petitioner challenges the board of trustees' decision to nonrenew his term contract for the following reasons: 1) the alleged impermissible use of a neighboring district's general counsel to preside over the hearing; 2) the failure of the board to provide additional time to Petitioner to present his case as a violation of due process; 3) the failure to follow the Texas Rules of Evidence which denied Petitioner a fair and meaningful hearing; 4) lack of credible and substantial evidence to affirm the proposal not to renew Petitioner's contract; and 5) lack of credible and substantial evidence to support a finding that the nonrenewal reasons were not a pretext for unlawful retaliation.

Failure to Exhaust Administrative Remedies

Petitioner failed to present issues 1 and 3 to either the board of trustees or in his Petition for Review. Petitioner did not present issue 2 to the board of trustees, although it is alluded to in his Petition for Review. The Commissioner lacks jurisdiction over these claims due to Petitioner's failure to exhaust administrative remedies. The Commissioner is limited to a review of the record before the board of trustees and is not to consider any additional evidence or issues. TEX. EDUC. CODE § 21.301(c). These issues should be dismissed for failure to exhaust administrative remedies and for lack of jurisdiction. In addition, Petitioner failed to specifically identify the constitutional or statutory authority that establishes a due process right. Issue 4, which was not presented in the Petition for Review and which involved substantial evidence to support the decision, will be addressed in conjunction with Petitioner's allegations of pretext and retaliation.

Even if Petitioner had not failed to exhaust administrative remedies, Petitioner would not have prevailed on Issues 1, 2 and 3. The use of the neighboring district's general counsel did not violate TEX. EDUC. CODE §§ 21.207 (regarding the employment status of an attorney) or 21.207(b-1) because the attorney was not acting as a hearing examiner for the purposes of making a recommendation to the board to consider in a subsequent meeting. These sections could not have applied to Petitioner's hearing because the board was present and did not hold a subsequent meeting to consider the attorney's recommendation and hear oral argument. Simply put, sections 21.207 and 21.207(b-1) do not apply to nonrenewal hearings conducted in the presence of the board of trustees. The board heard the case and decided the case. The failure to follow the Texas Rules of Evidence was not erroneous, because Chapter 21 of the Education Code and local policy DFBB (Local) do not require it. Further, there is no property interest when a term contract is nonrenewed; the only process that Petitioner was due in a nonrenewal hearing is the process established in Chapter 21, subchapter E and local

policy which implements these requirements. *Cole v. Castleberry Indep. Sch. Dist.,* Docket No. 102-R1-0811 (Comm'r Educ. 2011). No violation occurred. Last, the issue of a board setting time limits is well established favorably by the Commissioner. Petitioner was made fully aware of the time limit and the passage of time and chose how to spend the allotment. As in *Villalobos v. Austin Indep. Sch. Dist.,* 189-R1-597 (Comm'r Educ. 1997), "(t)he process was available to Petitioner; she failed to utilize it efficiently. That failure does not invalidate the board's decision."

Evidentiary Hearing

In his brief, Petitioner requests an evidentiary hearing before the Commissioner because he was not given a reasonable opportunity to provide testimony and to demonstrate that the record does not contain substantial evidence to support the decision to nonrenew. The record reflects that Petitioner did have a reasonable opportunity and chose not to reserve time to present a case in chief. Further, a party wishing to obtain an evidentiary hearing to provide evidence of a procedural irregularity that is not reflected in the record should file a motion well before the briefing deadlines in order that both parties may brief to all relevant facts. Petitioner's request should be denied for untimely filing and because no alleged procedural irregularity that is not reflected in the record is pled; the record demonstrates that Petitioner knowingly used his allotted time.

Substantial Evidence

The term "substantial evidence" is well defined by the courts. In *City of Alvin v. Public Utility Comm'n of Texas,* 876 S.W.2d 346, 355 (Tex.App.-Austin 1993, judgment set aside in accordance with settlement agreement, 893 S.W.2d 450), the court held:

> In *City of League City v. Texas Water Commission,* 777 S.W.2d 802 (Tex. App.-Austin 1989, no writ), we summarized the substantial evidence test: (1) the findings, inferences, conclusions, and decisions of an agency are presumed to be supported by substantial evidence, and the burden is on the party contesting the order to prove otherwise; (2) in applying the test, the reviewing court is prohibited from substituting its judgment for that of the agency as to the weight of the evidence of questions committed to

agency discretion; (3) substantial evidence is more than a scintilla, but the evidence in the record may preponderate against the decision of the agency and nonetheless amount to substantial evidence; (4) the true test is not whether the agency reached the correct conclusion, but whether some reasonable basis exists in the record for the action taken by the agency: and (5) the agency's action will be sustained if the evidence is such that reasonable minds could have reached the conclusion that the agency must have reached in order to justify its action. *Id.* at 805 (citing *Texas Health Facilities Comm'n Charter Medical-Dallas Inc., 665 S.W.2d 446, 452-53 (Tex. 1984)).

Thus, if more than a scintilla of evidence in the record supports the decision of the board, the decision must be upheld. *See* TEX. EDUC. CODE § 21.303(a).

Substantial evidence exists to support the board's decision to nonrenew Petitioner's term contract independently on each of the following bases:

(1) Failure to comply with official directives. Findings of Fact 7-10 contain descriptions of Petitioner's failures to comply with his principal's official directives, which constitute substantial evidence. Petitioner did not rebut these facts in the nonrenewal hearing.

(2) Deficiencies pointed out in observation reports, appraisals or evaluations. Finding of Fact 9 specifies deficiencies pointed out in the specified documents and constitutes substantial evidence. Petitioner did not rebut these facts in the nonrenewal hearing.

(3) Failure to fulfill duties or responsibilities. Findings of Fact 7-10 contain descriptions of Petitioner's failure to fulfill duties and responsibilities, which constitute substantial evidence. Petitioner did not rebut these facts in the nonrenewal hearing.

(4) Incompetency or inefficiency in the performance of duties. Findings of Fact 7-10 contain descriptions of Petitioner's incompetency or inefficiency in the performance of duties, which constitute substantial evidence. Petitioner did not rebut these facts in the nonrenewal hearing.

(5) Failure to comply with Board policies or administrative regulations. Finding of Fact 7 specifies Petitioner's failure to comply with board policy DH and constitutes substantial evidence. Petitioner did not rebut these facts in the nonrenewal hearing.

(6) Failure to comply with reasonable District requirements regarding professional development and growth. Finding of Fact 9 specifies Petitioner's failure to comply and constitutes substantial evidence. Petitioner did not rebut these facts in the nonrenewal hearing.

(7) Insubordination. Findings of Fact 7-10 contain descriptions of Petitioner's insubordination, which constitute substantial evidence. Petitioner did not rebut these facts in the nonrenewal hearing.

Given that Respondent has demonstrated that seven individual reasons for nonrenewal are supported by substantial evidence, it is concluded that a reasonable finder of fact could have reached the same conclusion that Respondent's board did. The Commissioner cannot substitute his judgment for that of the board.

Pretext

Petitioner contends that the board acted to nonrenew his contract because he filed a complaint with the EEOC, a protected activity. Petitioner's actions prior to August 18, 2011, when Respondent received notice of the charge, support a decision to nonrenew Petitioner's contract. In addition, Petitioner's supervisor, who had no notice of the charge until months later, was the employee who directed Petitioner and documented his failure to perform and other deficiencies. All actions up to the time that Petitioner told his principal about the EEOC charge were not pretextual and constitute substantial evidence to support the nonrenewal. There is no evidence that actions taken after the principal was notified by Petitioner about the charge were in retaliation for Petitioner's filing of the charge. There is no evidence that the decision of the board was retaliatory or

discriminatory. All of the district's actions were based upon Petitioner's performance and deficiencies.

Attorneys' Fees and Expenses

Petitioner fails to establish a legal right to an award of attorneys' fees and expenses. The Commissioner lacks authority to make such an award. *Lawson v. Lubbock Indep. Sch. Dist.,* Docket No. 102-R1-802 (Comm'r Educ. 2003).

Conclusion

Respondent's decision to nonrenew Petitioner's term contract was not arbitrary, capricious or unlawful and was supported by substantial evidence. *Davis v. Montgomery Indep. Sch. Dist.,* 34 S.W.3d 559, 566 (Tex. 2000). Petitioner's appeal should be dismissed in part and denied in part.

Conclusions of Law

After due consideration of the record, matters officially noticed, and the foregoing Findings of Fact, in my capacity as the Commissioner of Education, I make the following Conclusions of Law:

1.     The Commissioner has jurisdiction over this case under Texas Education Code section 21.301.

2.     Petitioner failed to exhaust administrative remedies by failing to present to the board of trustees the issue of the district's use of the general counsel of a neighboring school district to provide legal counsel to the board of trustees and to facilitate the hearings process.

3.     Petitioner failed to exhaust administrative remedies by failing to present to the Commissioner in his Petition for Review the issue of the district's use of the general counsel of a neighboring school district to provide legal counsel to the board of trustees and to facilitate the hearings process.

4.     Petitioner's issue regarding the district's use of the general counsel of a neighboring school district to provide legal counsel to the board of trustees and to

083-R1-0512                                    -9-

facilitate the hearings process should be dismissed for failure to exhaust administrative remedies and for lack of jurisdiction.

5. Petitioner failed to exhaust administrative remedies by failing to present to the board of trustees the issue of the board's failure to provide additional time to Petitioner for his case in chief.

6. Petitioner's issue regarding of the board's failure to provide additional time to Petitioner for his case in chief should be dismissed for failure to exhaust administrative remedies and for lack of jurisdiction.

7. Petitioner failed to exhaust administrative remedies by failing to present to the board of trustees the issue of the failure to follow the Texas Rules of Evidence during Petitioner's nonrenewal hearing before the board.

8. Petitioner failed to exhaust administrative remedies by failing to present to the Commissioner the issue of the failure to follow the Texas Rules of Evidence during Petitioner's nonrenewal hearing before the board.

9. Petitioner's issue regarding of the failure to follow the Texas Rules of Evidence during Petitioner's nonrenewal hearing before the board should be dismissed for failure to exhaust administrative remedies and for lack of jurisdiction.

10. Petitioner is not entitled to an evidentiary hearing before the Commissioner because the facts supporting a claim of a procedural irregularity are reflected in the record in that Petitioner was given a reasonable opportunity to provide testimony and to demonstrate that the record did not contain substantial evidence to support the nonrenewal.

11. Petitioner's request for an evidentiary hearing, contained in his brief, is untimely and should be denied.

12. Petitioner did not possess a property interest when his term contract was nonrenewed; therefore, no due process protections apply. *Cole v. Castleberry Indep. Sch. Dist.,* Docket No. 102-R1-0811 (Comm'r Educ. 2011).

13. Substantial evidence, as defined in *City of Alvin v. Public Utility Comm'n of Texas,* 876 S.W.2d 346, 355 (Tex.App.-Austin 1993, judgment set aside in accordance with settlement agreement, 893 S.W.2d 450), exists to support the finding that Petitioner failed to comply with official directives.

14. Substantial evidence, as defined in *City of Alvin v. Public Utility Comm'n of Texas,* 876 S.W.2d 346, 355 (Tex.App.-Austin 1993, judgment set aside in accordance with settlement agreement, 893 S.W.2d 450), exists to support the finding that Petitioner performance was deficient as pointed out in observation reports, appraisals or evaluations.

15. Substantial evidence, as defined in *City of Alvin v. Public Utility Comm'n of Texas,* 876 S.W.2d 346, 355 (Tex.App.-Austin 1993, judgment set aside in accordance with settlement agreement, 893 S.W.2d 450), exists to support the finding that Petitioner failed to fulfill his duties or responsibilities.

16. Substantial evidence, as defined in *City of Alvin v. Public Utility Comm'n of Texas,* 876 S.W.2d 346, 355 (Tex.App.-Austin 1993, judgment set aside in accordance with settlement agreement, 893 S.W.2d 450), exists to support the finding that Petitioner was incompetent or inefficient in the performance of his duties.

17. Substantial evidence, as defined in *City of Alvin v. Public Utility Comm'n of Texas,* 876 S.W.2d 346, 355 (Tex.App.-Austin 1993, judgment set aside in accordance with settlement agreement, 893 S.W.2d 450), exists to support the finding that Petitioner failed to comply with Board policies or administrative regulations.

18. Substantial evidence, as defined in *City of Alvin v. Public Utility Comm'n of Texas,* 876 S.W.2d 346, 355 (Tex.App.-Austin 1993, judgment set aside in accordance with settlement agreement, 893 S.W.2d 450), exists to support the finding that Petitioner failed to comply with reasonable District requirements regarding professional development and growth.

19.     Substantial evidence, as defined in *City of Alvin v. Public Utility Comm'n of Texas,* 876 S.W.2d 346, 355 (Tex.App.-Austin 1993, judgment set aside in accordance with settlement agreement, 893 S.W.2d 450),  exists to support the finding that Petitioner was insubordinate.

20.     The nonrenewal of Petitioner's term contract is supported by substantial evidence of non-discriminatory and non-retaliatory performance-based evidence.

21.     The Commissioner lacks jurisdiction to award attorneys' fees and expenses. *Lawson v. Lubbock Indep. Sch. Dist.,* Docket No. 102-R1-802 (Comm'r Educ. 2003).

22.     Respondent's decision to nonrenew Petitioner's term contract was not arbitrary, capricious or unlawful and was supported by substantial evidence.  *Davis v. Montgomery Indep. Sch. Dist.,* 34 S.W.3d 559, 566 (Tex. 2000).

23.     Petitioner's appeal should be dismissed in part for failure to exhaust administrative remedies and denied in part.


ORDER

After due consideration of the record, matters officially noticed, and the foregoing Findings of Fact and Conclusions of Law, in my capacity as the Commissioner of Education, it is hereby

ORDERED that Petitioner's appeal, be, and is hereby, DISMISSED IN PART and DENIED IN PART.

SIGNED AND ISSUED this _____ day of July, 2012.


_____
R. TODD WEBSTER
CHIEF DEPUTY COMMISSIONER


083-R1-0512                                        -12-

# Tab 7

*La Clair v. Latexo Indep. Sch. Dist.,*

*Docket No. 065-R1-0610 (Comm'r Educ. 2010)*

PATTY LA CLAIR§BEFORE THE
§
§
v.§COMMISSIONER OF EDUCATION
§
LATEXO INDEPENDENT§
SCHOOL DISTRICT§THE STATE OF TEXAS

## DECISION OF THE COMMISSIONER

Petitioner, Patty LaClair, complains of the decision of Respondent, Latexo Independent School District, to nonrenew her term contract. Sandy Lowe is the Administrative Law Judge appointed by the Commissioner of Education to hear this cause. Petitioner is represented by Jefferson K. Brim, III, Attorney at Law, Austin, Texas. Respondent is represented by Sara Hardner Leon, Attorney at Law, Austin, Texas.

## Findings of Fact

After due consideration of the record and matters officially noticed, it is concluded that the following Findings of Fact are supported by substantial evidence and are the Findings of Fact that best support Respondent's decision.

1. Petitioner was employed by Respondent as a teacher under a term contract for the 2009-2010 school year.

2. Petitioner's job assignment was that of elementary physical education teacher and tennis coach.

3. In connection with her coaching duties, Petitioner drove a school district-owned vehicle.

4. On April 15, 2010, the superintendent notified Petitioner by letter that the board of trustees had voted to propose not to renew her term contract for the next school year. The reasons listed for the proposed action were: the illegal possession, use, manufacture or distribution of a controlled substance, a drug, a dangerous drug, hallucinogens, or other

substances regulated by state statutes; failure to comply with board policies or administrative regulations; failure to meet the District's standards of professional conduct; and disability, not otherwise protected by law, that prevents the employee from performing the essential functions of the job. (LR Ex. 12)

5.     Respondent's Policy DFBB (LOCAL) sets forth the reasons for the proposed nonrenewal of a term contract. Respondent's Policies DHE (LEGAL), and DHE (LOCAL) set forth the employee standards of conduct. Respondent's reasons for proposing Petitioner's nonrenewal are either set out in DFBB (LOCAL) or violate the district's policies regarding standards of professional conduct.

6.     Petitioner timely requested a hearing on the proposed nonrenewal on May 3, 2010. The hearing was held on May 17, 2010 and the board of trustees voted to nonrenew Petitioner's employment contract. Respondent issued written notice of the decision on May 19, 2010.

7.     Petitioner had morphine in her blood stream on February 17, 2010.

## Discussion

Petitioner contends Respondent improperly nonrenewed her term contract. In particular, Petitioner alleges that Respondent's decision to nonrenew her contract is arbitrary and capricious and is not supported by substantial evidence.

### Substantial Evidence Review

The Commissioner's standard of review in nonrenewal cases is specified in the Texas Education Code:

> If a board of trustees decided not to renew a teacher's term contract, the commissioner may not substitute the commissioner's judgment for that of the board unless the board's decision is arbitrary, capricious, or unlawful, or the hearing examiner's original findings of fact are not supported by substantial evidence.

TEX. EDUC. CODE § 21.303(a). The term "substantial evidence," as used in this section of the Texas Education Code, has the same meaning as when the term is used in Texas Government

Code section 2001.174(2)(E), "not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole…".

The term "substantial evidence" is well defined by the courts. In *City of Alvin v. Public Utility Comm'n of Texas*, 876 S.W.2d 346, 355 (Tex.App.-Austin 1993, judgment set aside in accordance with settlement agreement, 893 S.W.2d 450), the court held:

> In *City of League City v. Texas Water Commission*, 777 S.W.2d 802 (Tex. App.-Austin 1989, no writ), we summarized the substantial evidence test: (1) the findings, inferences, conclusions, and decisions of an agency are presumed to be supported by substantial evidence, and the burden is on the party contesting the order to prove otherwise; (2) in applying the test, the reviewing court is prohibited from substituting its judgment for that of the agency as to the weight of the evidence of questions committed to agency discretion; (3) substantial evidence is more than a scintilla, but the evidence in the record may preponderate against the decision of the agency and nonetheless amount to substantial evidence; (4) the true test is not whether the agency reached the correct conclusion, but whether some reasonable basis exists in the record for the action taken by the agency; and (5) the agency's action will be sustained if the evidence is such that reasonable minds could have reached the conclusion that the agency must have reached in order to justify its action. *Id.* at 805 (citing *Texas Health Facilities Comm'n v. Charter Medical-Dallas Inc*., 665 S.W.2d 446, 452-53 (Tex.1984)).

The substantial evidence standard is designed to determine whether a board's actions are reasonable.

Nonrenewal

A school district may nonrenew a teacher's term contract for the reasons it establishes in its employment policies. TEX. EDUC. CODE § 21.203(b). The nonrenewal of a term contract, unlike the termination of a term contract, does not require that good cause be shown. TEX. EDUC. CODE §§ 21.203(e), 21.211(a)(1). The policy reasons given to propose the nonrenewal of Petitioner's contract are:

1. The illegal possession, use, manufacture or distribution of a controlled substance, a drug, a dangerous drug, hallucinogens, or other substances regulated by state statutes. Board Policy DFBB(LOCAL)(13);
2. Failure to comply with Board policies or administrative regulations. Board Policy DFBB(LOCAL)(6);
3. Failure to meet the District's standards of professional conduct. Board Policy DFBB(LOCAL)(14); and

4. Disability, not otherwise protected by law that prevents the employee from performing the essential functions of the job. Board Policy DFBB(LOCAL)(18).

In order to support a nonrenewal, it is sufficient that only one of the reasons for proposed nonrenewal must be found to be supported by substantial evidence. *Gibson v. Ore City Independent School District* Docket No. 187-R1-690 (Comm'r Educ. 1992)

Substantial Evidence in This Case

Petitioner points to no evidence in the record that supports her claims and instead argues that the board should have ignored the results of the random urine test performed in compliance with federal law because the test results allegedly constitute hearsay and that there was no competent evidence that the test results relied upon by Respondent was from the urine sample taken from Petitioner. Petitioner argued to the board that its administration had failed to offer evidence that the results being considered were actually from the test in which she participated. The testing protocol followed in this case on the urine sample from Petitioner, including documented safeguards, chain of custody records and review by the medical review officer were well-defined, highly regulated and followed federally mandated procedures. (LR-EX. 16) The superintendent testified that he received results indicating that tests on two separate quantities of the same urine sample taken from Petitioner on February 17, 2010, showed a positive reaction for morphine. (LR-TR pg 37) This alone constitutes substantial evidence that Petitioner used morphine. For this reason, it is not necessary to resolve the parties' dispute as to whether the lab report does or does not qualify for the business records exception or the public records exception to the hearsay rule.

Conclusion

Respondent's decision to nonrenew Petitioner's contract should be upheld. The presence of morphine in Petitioner's urine sample violated Respondent's board policy DFBB(LOCAL)(13) prohibiting the illegal use of a dangerous drug, including a controlled substance.

Conclusions of Law

After due consideration of the record, matters officially noticed, and the foregoing Findings of Fact, in my capacity as the Commissioner of Education, I make the following Conclusions of Law:

1.      The Commissioner has jurisdiction over this cause under Texas Education Code section 21.301.

2.      The Commissioner may only overturn a board's decision to nonrenew a term contract if the board's decision is arbitrary, capricious, or unlawful, or the hearing examiner's original findings of fact are not supported by substantial evidence.  TEX. EDUC. CODE § 21.303(a).

3.      The Commissioner determines whether a board's decision to nonrenew a term contract is supported by substantial evidence by considering whether the reliable and probative evidence in the record as a whole support the reasons given in the notice of proposed nonrenewal. TEX. EDUC. CODE § 21.303(a), TEX. GOV'T CODE § 2001.174(2)(e), 19 TEX ADMIN CODE § 157.1072(b).

4.      In order to determine whether there is substantial evidence to support the nonrenewal of Petitioner's contract, it must be determined whether Respondent's board could have reasonably concluded that any of the four policy reasons for nonrenewal did occur. TEX. EDUC. CODE § 21.203(b).

5.      The nonrenewal of a term contract, unlike the termination of a term contract, does not require that good cause be shown.  TEX. EDUC. CODE §§ 21.203(e), 21.211(a)(1).

6.      The illegal possession, use, manufacture or distribution of a controlled substance, a drug, a dangerous drug, hallucinogens, or other substances regulated by state statutes, given as a reason for nonrenewal in Respondent's notice of proposed nonrenewal is supported by substantial evidence.

7.      A school board as the fact finder, when it both hears and decides a proposed nonrenewal, is the sole judge of a witnesses' credibility and the weight to be given to evidence.

8.     Respondent's decision to nonrenew Petitioner's contract is not arbitrary and capricious.

9.     Petitioner's appeal should be denied.

## O R D E R

After due consideration of the record, matters officially noticed and the foregoing Findings of Fact and Conclusions of Law, in my capacity as Commissioner of Education, it is hereby

ORDERED that Petitioner's appeal be, and is hereby DENIED.

SIGNED AND ISSUED this _____ day of _____, 2010.


_____
ROBERT SCOTT
COMMISSIONER OF EDUCATION

# Tab 8

*Major v. E. Cent. Indep. Sch. Dist.,*

*Docket No. 024-R1-1184 (Comm'r Educ. 1985)*

MARY MAJOR § BEFORE THE STATE
§
§
V. § COMMISSIONER OF EDUCATION
§
EAST CENTRAL INDEPENDENT §
SCHOOL DISTRICT § THE STATE OF TEXAS

## DECISION OF THE COMMISSIONER

### Statement of the Case

Mary Major, Petitioner, brings this appeal, pursuant to the Term Contract Nonrenewal Act (TCNA), Tex.  Educ.  Code Ann.  §§21.201 - .211 (Vernon Supp.  1984) from an action of the East Central Independent School District (ECISD), Respondent, nonrenewing her term contract as a teacher for the 1984-85 school year.  A hearing on the matter was held before the ECISD Board of Trustees on September 13, 1984.  Petitioner was represented at the hearing and on appeal by Catherine Quinones, Attorney at Law, San Antonio, Texas.  Respondent was represented at the hearing by Emerson Banack, Jr., Attorney at Law, San Antonio, Texas, and on appeal by Nan Seidenfeld, Attorney at Law, of the same firm.  The hearing officer appointed by the State Commissioner of Education for the purpose of reviewing the local record and issuing a Proposal for Decision is Mark W.  Robinett.

On April 9, 1985, the Hearing Officer issued a Proposal for Decision recommending to the State Commissioner of Education that Petitioner's appeal be denied.  Our records reflect that a copy of the Proposal for Decision was received by both parties.  Petitioner filed Exceptions to the Proposal for Decision on May 7, 1985.  No reply to the exceptions was filed.

### Findings of Fact

After due consideration of the evidence and matters officially noticed, in my capacity as State Commissioner of Education, I make the following Findings of Fact:

Finding of Fact No. 1:

By letter dated March 16, 1984, signed by Jerry Beauchamp, president of the Board of Trustees, Petitioner was notified that her nonrenewal had been recommended by the superintendent for the 1984-85 school year, for the following reasons:

1. Deficiencies pointed out in observation reports, evaluations, supplemental memoranda, or other communications.

2. Failure to fulfill duties or responsibilities.

3. Failure to maintain an effective working relationship, or maintain good rapport, with parents, the community, or colleagues.

(See Constanzo Ex. 1).

Finding of Fact No. 2:

A hearing on the matter was postponed by agreement of the parties until September 13, 1984. (Constanzo Ex. 1: Letter from Emerson Banack to Catherine Quinones dated September 10, 1984).

Finding of Fact No. 3:

At the hearing, Ken Hanson, Principal of Sinclair Elementary School testified as follows:

(a) Professional relationship with Petitioner:

That he had supervised Petitioner at Salado Elementary School for approximately seven years, and at Pecan Valley Elementary School for seven years, prior to the opening of Sinclair Elementary. He supervised Petitioner at Sinclair three years prior to her nonrenewal. (Tr. 8-9). Petitioner taught first grade her first two years at Sinclair. Her third year, she taught "a split fourth and fifth - - Fifth grade language arts and then a split second and third the last part of last year." (Tr. 10).

(b) Areas of concern:

On October 21, 1983, he met with Petitioner and "listed eight points that [he] felt like needed to be improved." He also listed "suggestions and recommendations on how to improve those." (Tr. 16). In connection with that meeting, he sent a memorandum to Petitioner, which reads, in pertinent part, as follows:

```
TO:              MARY MAJOR
FROM:            KEN HANSON
CONCERNING:      EVALUATION PROCEDURES USED TO
                 DETERMINE
```

GRADES AND GENERAL CLASSROOM
ENVIRONMENT.


AREAS OF RESPONSIBILITY:   1.   DIRECT & EVALUATE LEARNING
EXPERIENCES OF PUPILS IN
ALL SCHOOL ACTIVITIES.
BOTH CURRICULAR & EXTRA
CURRICULAR.

2.   PROVIDE GUIDANCE TO PUPILS
WHICH WILL PROMOTE THEIR
WELFARE AND PROPER EDUCATIONAL
DEVELOPMENT.

AREAS OF CONCERN THAT NEED TO BE CORRECTED:

1.   A SITUATION HAS BEEN CREATED WHEREIN STUDENTS &
PARENTS FEEL THAT NOT ALL OF YOUR STUDENTS RECEIVE AN
EQUAL AMOUNT OF YOUR TRUST AND RESPECT.  IT IS IMPORTANT
THAT PARENTS HAVE CONFIDENCE IN THEIR CHILDREN'S
TEACHER, THEREFORE IT IS RECOMMENDED THAT YOU TREAT
EVERY CHILD FAIRLY AND CREATE A FEELING OF TRUST AND
RESPECT.

2.   YOU NEED TO DEVELOP AN APPRECIATION FOR PARENTAL
CONCERN REGARDING STUDENTS AND TO ASSIST WITH THESE
CONCERNS.  PARENTS CAN BE AN ASSET TO THE TEACHER,
ESPECIALLY IF THEY ARE CONCERNED WITH THEIR CHILDREN'S
LEARNING.

3.   MANY STUDENTS & PARENTS FEEL YOU LACK A REAL CONCERN
FOR THEIR CHILD.  CLASSROOM MANNERISMS, TONE OF VOICE
AND COMMENTS DIRECTED TOWARDS STUDENTS GIVE REASON
FOR CONCERN.  IT IS RECOMMENDED THAT YOU DEVELOP A
MORE POSITIVE ATTITUDE TOWARDS STUDENTS AND THEIR
PARENTS.

4.   YOU HAVE NOT ESTABLISHED A POSITIVE RAPPORT WITH YOUR
STUDENTS.  BECAUSE OF THIS LACK OF RAPPORT, STUDENTS ARE
UNWILLING TO TAKE AN ACTIVE PART IN PLANNED ACTIVITIES.
IT IS RECOMMENDED THAT YOU BE MORE RELAXED AND CREATE
A CLASSROOM ENVIRONMENT CONDUCIVE TO STUDENT
INVOLVEMENT.

5.   DUE TO THIS LACK OF RAPPORT WITH YOUR STUDENTS, THE

CLASSROOM ENVIRONMENT SEEMS RESTRICTED AND MAKES STUDENTS RELUCTANT TO EXPRESS THEMSELVES. BECAUSE OF THE LACK OF MEANINGFUL COMMUNICATION BETWEEN STUDENTS AND TEACHER, LEARNING CANNOT BE MAXIMIZED. IT IS RECOMMENDED THAT YOU ESTABLISH LINES OF COMMUNICATION WITH ALL STUDENTS IN THE CLASSROOM.

6. THERE IS A LACK OF ADEQUATE RECORD-KEEPING PROCESS. INFORMATION OF STUDENTS IS NOT MAINTAINED IN AN ORGANIZED & ORDERLY FASHION. ACCURATE RECORDS NEED TO BE MAINTAINED FOR EACH STUDENT IN THE CLASS.

7. YOUR RECORD KEEPING IS INADEQUATE. STUDENTS' GRADES ARE DETERMINED BY CRITEREA THAT ARE FREQUENTLY UNKNOWN, INAPPROPRIATE AND INCONSISTENT.

8. YOU DO NOT ASSESS STUDENTS' PERFORMANCES & LEVELS OF ACHIEVEMENT WITH WELL DEFINED CRITERIA. YOU FAIL TO PROVIDE STUDENTS WITH CORRECTIVE INFORMATION WHILE THEY ARE WORKING ON THEIR ASSIGNMENTS.

SUGGESTIONS & RECOMMENDATIONS:

ITEMS 1-5

1. MEET WITH THE COUNSELOR, MR. BAUER, THE WEEK OF OCTOBER 24-28 AND WORK OUT A PLAN TO ALLEVIATE THE TENSION & LACK OF CONSISTENCY IN DEALING WITH STUDENTS.

2. WORK ON PARENT-TEACHER CONFERENCE TECHNIQUES. SUGGESTIONS ARE LISTED IN THE SINCLAIR ELEMENTARY TEACHER HANDBOOK.

3. WHEN HAVING A PARENT-TEACHER CONFERENCE, HAVE A THIRD PARTY SIT IN WITH YOU. IT IS SUGGESTED THAT EITHER MR. BAUER, MRS. MILLER OR MR. HANSON BE THAT THIRD PERSON.

4. IN COOPERATION WITH THE COUNSELOR, DEVELOP A SET OF CLASSROOM RULES SO THE STUDENTS WILL KNOW WHAT IS EXPECTED OF THEM. MAKE THE STUDENTS AWARE OF THOSE RULES AND POST THEM IN THE ROOM. BE CONSISTENT WITH THOSE RULES.

5. WORK WITH MR. BAUER AND MRS. MILLER TO DEVELOP A POSITIVE ATTITUDE TOWARDS STUDENTS AND PARENTS.

ITEMS 6-8

6. MEET WITH MRS. MILLER TO SET UP A CONSISTENT GRADING SYSTEM. ALL GRADES SHOULD BE BASED ON 100 WITH TWO GRADES GIVEN PER WEEK, EXCEPT IN A SHORT WEEK.
7. TURN ALL GRADED PAPERS INTO MRS. MILLER OR MR. HANSON TO BE DOUBLE CHECKED. DO NOT RECORD THE GRADES UNTIL APPROVAL HAS BEEN GIVEN BY MRS. MILLER OR MR. HANSON.
8. SET UP A FOLDER ON EACH STUDENT AND KEEP PAPERS THAT HAVE BEEN GRADED AND RECORDED IN THE GRADE BOOK. PAPERS THAT HAVE BEEN GRADED AND RECORDED SHOULD BE SENT HOME TO BE SIGNED, RETURNED AND PLACED IN THE STUDENT'S FOLDER. THOSE PAPERS WILL BE SENT HOME WITH THE STUDENT AT THE END OF THE SIX WEEKS PERIOD.

STUDENTS WILL BE EXPECTED TO TAKE THEIR GRADED WORK HOME ON A REGULAR BASIS. RECORDED GRADES NEED TO BE RETURNED.

IMPROVEMENT IN THE ABOVE ITEMS WILL BE EXPECTED WITHIN TWO WEEKS. (NOVEMBER 4, 1983). WE WILL MEET AGAIN AT THAT TIME TO REVIEW THE PROGRESS MADE.

DATE OF CONFERENCE_____

_____        _____/s/_____
TEACHER                                        PRINCIPAL


TEACHER REFUSED TO SIGN.

(Tr. 16-19; Hanson Ex. 1 - - Memorandum dated 10-21-83.)


(c) General lack of compliance:

Mr. Hanson did not notice an immediate improvement following the memorandum, nor did he ever notice a full compliance with the suggestions and improvements of the areas and deficiencies noted. (Tr. 20, 56-57).

(d) Failure to submit grades:

In February 1984, Petitioner had not complied with the October request concerning grades; i.e., by February 27, 1984, Petitioner had not provided Mr. Hanson with "anything to double check." (Tr. 20-21, 28-29; Hanson Ex. 1 - - Conference Record 2-27-84).

(e) Petitioner's 1983-84 Evaluation:

On March 5, 1984, Mr. Hanson evaluated Petitioner. He rated her as "Professionally Competent" in the areas of "Attitude," "Dependability and Punctuality," "Concern for Students," and "Loyalty to Staff, School District."

He rated her as "Requires Improvement" in the areas of "Adaptability and Flexibility," "Classroom Control," "Knowledge of Subjects," "Mature Leadership," "Rapport with Students," "Tact and Diplomacy," and "Teaching Methods." He rated her performance as "Unacceptable" in the category of "Organization of Work." His recommendation was that her employment be nonrenewed.  As an addendum to the evaluation form, Mr.  Hanson added the following comments:

AREA:  ADAPTABILITY & FLEXIBILITY

E.G.   1.  HAS TROUBLE RESPECTING GROUP DECISIONS
     2.  DOES NOT ACCEPT GRACIOUSLY CHANGES THAT ARE  IN THE
      INTEREST OF THE STUDENTS

AREA:  CLASSROOM CONTROL

E.G.   1. DOES NOT MAINTAIN STUDENT CONFIDENCE
     2. DOES NOT PROVIDE A TENSION FREE ATMOSPHERE WHERE
      STUDENTS ARE ORDERLY AND ATTENTIVE
     3. DOES NOT PROVIDE CLASSROOM SITUATIONS WHICH INDICATES
      PLANNING AND CONTROL FOR A GOOD LEARNING SITUATION

AREA:  KNOWLEDGE OF SUBJECT

E.G.   1.  DOES NOT USE EXAMINATIONS THAT REQUIRE UNDERSTANDING
      OF CONCEPTS AND MASTERY OF BASIC INFORMATION
     2.  DOES NOT USE A VARIETY OF INSTRUCTIONAL STRATEGIES
     3.  DOES NOT EVALUATE STUDENTS EFFECTIVELY AND FAIRLY

AREA:  MATURE LEADERSHIP

E.G.   1.  DOES NOT RESPOND POSITIVELY TO SUGGESTIONS
     2.  DOES NOT EXPRESS DESIRES AND IDEAS WITH GOOD JUDGMENT
     3.  PROBLEMS WITH DEPENDABILITY

AREA:  ORGANIZATION OF WORK

E.G.   1.  SUBSTITUTE LESSON PLANS ARE NOT KEPT UP TO DATE

AND WELL ORGANIZED
2.  LIMITED USE OF AUDIO/VISUAL MATERIALS
3.  DOES NOT PROVIDE OPPORTUNITY FOR STUDENTS TO DEVELOP LEADERSHIP ABILITY
4.  DOES NOT PROVIDE FLEXIBLE LONG RANGE PLANS
5.  DOES NOT PLAN CAREFULLY AND SEQUENTIALLY

AREA:   RAPPORT WITH STUDENTS

E.G.    1.  IS NOT FAIR AND IMPARTIAL
       2.  DOES NOT SHOW PRAISE READILY

AREA:   TACT AND DIPLOMACY

E.G.    1.  DOES NOT SHOW RESPECT FOR OTHERS
       2.  DOES NOT POSSESS THE DIPLOMACY TO INTERACT CONSTRUCTIVELY WITH OTHERS

AREA:   TEACHING METHODS

E.G.    1.  DOES NOT PROVIDE A ROOM THAT IS A CHALLENGING LEARNING ENVIRONMENT
       2.  HAS A PROBLEM EXPRESSING HER IDEAS IN WRITING
       3.  DOES NOT SEEK TO FIND CAUSES OF DISINTEREST OR DISCIPLINE PROBLEMS AND MAKE ADJUSTMENTS OR RECOMMENDATIONS.

(Tr.  34-37; Hanson Ex.  1 - - Evaluation Form dated 3-5-84 and addendum).

(f) The nonrenewal recommendation:

On March 7, 1984, Principal Hanson provided Petitioner with a memorandum concerning his recommendation that her employment be nonrenewed, which reads, in pertinent part, as follows:

I AM RECOMMENDING NON-RENEWAL OF MARY MAJOR FOR THE FOLLOWING REASONS ALONG WITH THE MATERIALS PRESENTED TO HER ON MARCH 5, 1984.

AREAS OF WEAKNESS (JOB DESCRIPTION FOUND IN PERSONNEL HANDBOOK)

1.  DIRECT AND EVALUATE LEARNING EXPERIENCE OF PUPILS IN ALL SCHOOL ACTIVITIES, BOTH CURRICULAR AND EXTRACURRICULAR

2.  PROVIDE GUIDANCE TO PUPILS WHICH WILL PROMOTE THEIR
    WELFARE AND PROPER EDUCATIONAL DEVELOPMENT

3.  ASSUME RESPONSIBILITY FOR EFFECTIVE ORGANIZATION AND
    MANAGEMENT OF CLASSROOM ACTIVITIES

BOARD POLICIES (DOAD LOCAL - REASONS FOR NON-RENEWAL)

1.  DEFICIENCIES POINTED OUT IN OBSERVATION REPORTS,
    EVALUATIONS, SUPPLEMENTAL MEMORANDA, OR OTHER
    COMMUNICATIONS.

2.  FAILURE TO FULFILL DUTIES OR RESPONSIBILITIES.

3.  FAILURE TO MAINTAIN AN EFFECTIVE WORKING RELATIONSHIP,
    OR MAINTAIN GOOD RAPPORT, WITH PARENTS, THE COMMUNITY,
    OR COLLEAGUES.

DOCUMENTATION DATE: DOCUMENT OF 10-21-83 - AREAS OF CONCERN
THAT NEED TO BE CORRECTED AND MATERIALS PRESENTED TO MRS.
MAJOR ON MARCH 5, 1984.

AREAS OF CONCERN NOT CORRECTED - ITEMS 1, 2, 3, 4, 6, 7, 8

OF THE RECOMMENDATIONS LISTED ON PAGE 2 OF THE 10-21-84
DOCUMENT, ONLY THE MEETINGS WITH MRS.  MILLER CONCERNING THE
GRADING SYSTEM WAS CARRIED FORWARD.  NO OTHER EFFORT WAS
MADE TO FOLLOW THROUGH ON THE REMAINDER OF THE
RECOMMENDATIONS.

(Hanson Ex.  1 - - Memo dated March 7, 1984).
Finding of Fact No.  4:

At the hearing, Laurie Miller, administrative assistant at Sinclair Elementary testified

as follows:

(a) Beginning in October of the 1983-84 school year, she attempted, at the request of
    Principal Hanson, to assist Petitioner "in the grading area in fifth grade and fourth
    grade language arts." (Tr.  67).

(b) Upon first reviewing Petitioner's papers, Ms.  Miller determined that the papers
    were not graded correctly and that she could find no consistency in the grading.
    (Tr.  68-70).

(c) After reviewing the papers with Petitioner, Ms.  Miller requested that all papers
    be given to her or to Principal Hanson prior to any grades being recorded in the

gradebook.  (Tr.  70-71).

(d) Ms.  Miller did not receive the requested papers.  (Tr.  70).

(e) The grades placed on the permanent records of Petitioner's students did not match their report card grade.  There was "almost one [inconsistency] per student. . . . in most cases several grades per student." Ms.  Miller had not "come across this" in her thirteen years in education.  (Tr.  72-73).

Finding of Fact No.  5:

At the hearing, Petitioner testified as follows:

(a) She did not find out that she would be teaching fifth grade during the 1983-84 school year until the first day of school; i.e., one week before the students reported for class.  (Tr.  87-88).

(b) She took a six weeks leave of absence for surgery during the 1983-84 school year, which ended the third week of January.  Upon her return, she was not returned to her fifth grade class - - rather, she was given the "slower students" - - ones the other teachers "did not want." (Tr.  96).

(c) In previous years of working with Principal Hanson, she had not been subjected to any significant criticism.  (Tr.  103-04).

Discussion

Petitioner first claims that she was denied a fair hearing before the Board of Trustees, inasmuch as the Board permitted its attorney to serve in the dual capacity of prosecutor and advisor to the Board.  Petitioner states that the Board should have retained an independent attorney to advise it concerning the matter of ruling on objections, procedural points, offers of proof, and other legal matters.  The record, however, indicates that when the representative of the administration stated his opinion on legal matters, Petitioner's attorney was allowed to do the same.  Nothing in the record suggests that the administration's attorney was allowed to exert so much influence over the Board's consideration, outside of his role as the administration's representative, that Petitioner was denied a fair opportunity to present her case for renewal and have it considered fairly.  See Earnest v.  Blum ISD, No.  121-R1-683, pp.  8-9 (Comm.  Educ., March 1985).

Petitioner next asserts that she was denied due process of law, "in that the President

of the Board of Trustees announced prior to the hearing that all rules of evidence would be suspended for the hearing." First, what the President announced was the following: "Finally, the hearing is not a court of law and the rules - - formal rules of evidence do not apply in this case." (Tr. 5). He did not state that "_all_ rules of evidence would be _suspended_ for the hearing." In addition, to the extent, if any, that it was error to announce that the formal rules of evidence did not apply, there was no objection to the announcement at the time it was made, nor does the record indicate that any specific evidence was erroneously admitted which would have prejudiced Petitioner to the extent that would require reversal of the school board's decision.

Petitioner next asserts in her Petition for Review the following:

## VI.

Respondent denied Petitioner due process of law in that before the hearing started, each member of the Board of Trustees present at the hearing had a bound copy of the total stack of documents that the attorney for Respondent referred to during his presentation of his case. Attorney for Respondent never offered any of these documents into evidence nor did the President of the Board of Trustees accept any of these documents into evidence.

## VII.

Respondent denied Petitioner due process of law in that the majority of the testimony offered against Petitioner was hearsay evidence and based on the fact that the stack of documents existed. Petitioner was not confronted with the witnesses against her but rather with hearsay based on a stack of documentation never offered or accepted into evidence.

The record reflects that the stack of documents to which Petitioner refers consisted of copies of the exhibits presented to the Board at the hearing and that Petitioner had received a copy of all such documents in March 1984. (Tr. 10-11). The documents marked "Hanson Ex. 1" were offered to the board as follows: "Mr. President, we would submit at this time for the board's consideration and for it's (sic) review at it's (sic) pleasure the . . . exhibits marked Hanson Exhibit 1. . ." (Tr. 40). Petitioner's attorney objected to the presence of a handwritten report by Laurie Miller concerning a particular incident, dated 4-21-82. Her objection was overruled. (Tr. 42). The Board president did not state specifically that the exhibit was admitted into evidence.

In relation to "Miller Ex. 1," the administration's attorney stated that it was "marked" for the Board's consideration. No objection was made by Petitioner after reviewing the

documents. Again, it was not specifically stated that the exhibit had been entered into evidence. (Tr. 73-74).

In relation to "Constanzo Ex. 1" and "Constanzo Ex. 2," the administration's attorney stated that he would "submit" them "for the board's consideration." (Tr. 78). Again, no objection was made by Petitioner; and, again, it was not specifically noted that the exhibits were admitted into evidence.

A board of trustees at a nonrenewal hearing should not consider anything that would not constitute evidence before the State Commissioner of Education. 19 Tex. Admin. Code §157.64(g)(7). However, all of the procedural niceties observed in court or at an administrative proceeding before the Commissioner need not be rigidly followed at a local nonrenewal hearing. (Indeed, §21.205(b) of the TCNA specifically authorizes the district to promulgate its own rules concerning the procedure to be followed at a nonrenewal hearing.) Although the recommended procedure is for the board president to state specifically that certain evidence is "admitted," those words need not be articulated where it is clear from the context that the decision maker (i.e., the board) is treating what has been submitted to it as "evidence." In such a case, if the teacher does not believe that it is proper for such "evidence" to be considered, his or her objection should be stated at that time, so the board can remove it from its consideration. In short, although the Commissioner may, on appeal, reject from his consideration any documents which were erroneously admitted as evidence, he should not reject evidence which is otherwise admissible merely because a non-lawyer presiding over an evidentiary hearing for one of the few times in his or her life was not aware (or forgot) that documentary evidence should be orally "admitted."

Petitioner's final claim is that the decision of the Board of Trustees was not supported by substantial evidence. Indeed, a great deal of evidence was introduced at the hearing which was of questionable value. Much of it, not set forth in this Decision, was compiled before the 1983-84 school year, and was not offered for the purpose of demonstrating that Petitioner had certain problems in previous years, was counseled on them, and then failed to improve. Only that evidence set forth in the Findings of Fact will be considered for the purpose of determining whether Petitioner's nonrenewal was supported by substantial evidence.

In reviewing a nonrenewal decision of a local board of trustees, the Commissioner has no authority to simply substitute his judgment for the school board's judgment by determining whether the school board reached the proper conclusion on the basis of conflicting evidence. Gerst v. Guardian Savings & Loan Association, 434 S.W.2d 113, 115 (Tex. 1968). Rather, the Commissioner must affirm the decision of the school board if it was supported by substantial evidence. Tex. Educ. Code Ann. §21.207(a) (Vernon Supp. 1984). Substantial evidence need not be much evidence, and although "substantial" means more than a scintilla, or some evidence, it is less than is required to sustain a jury verdict being attacked as against the great weight and preponderance of the evidence. Shelton v. Aquilla, No. 153-R1-481, p. 14 (Comm. Educ., June 1983).

In the present case, Petitioner was counseled about a list of eight shortcomings in October 1983. Her principal testified that she did not improve in virtually all areas by February 1984. Her March 1984 evaluation contained seven areas in which she was rated as requiring improvement and one area which was unacceptable. The evaluator was under oath and was cross-examined by Petitioner. His critical comments and evaluation were not conclusively demonstrated to be without substance. Under these circumstances, it can only be concluded that the evidence was "substantial"; i.e., the Board of Trustees could have reasonably based its decision not to offer Petitioner employment for the 1984-85 school year on such evidence.

## Exceptions to the Proposal

Petitioner's first exception complains that the Hearing Officer "found" that Petitioner did not correct the deficiencies in her evaluaton. What was "found" was that enough evidence was introduced at the local hearing to justify the school board's finding to that effect. Petitioner points out in her exceptions that there is evidence in the transcript to support a finding to the contrary. However, under the substantial evidence standard, if there is enough evidence in the record to constitute substantial evidence, the local school board's decision must stand even if the evidence is in conflict and even if the Commissioner disagrees with the result. Hegar v. Frisco ISD, No. 120-R1a-584, p. 8 (Comm. Educ., Feb. 1985).

## Conclusions of Law

After due consideration of the record, matters officially noticed, and the foregoing Findings of Fact, in my capacity as State Commissioner of Education, I make the following Conclusions of Law:

1.  The decision of the school district to nonrenew Petitioner's employment for the 1984-85 school year was not arbitrary, capricious, or unlawful.

2.  The decision of the school district to nonrenew Petitioner's employment was supported by substantial evidence.

3.  The State Commissioner of Education may not substitute his judgment for that of the local board of trustees.

4.  Petitioner's appeal should be DENIED.

## O R D E R

After due consideration of the record, matters officially noticed, and the foregoing Findings of Fact and Conclusions of Law, in my capacity as State Commissioner of Education, it is hereby

ORDERED that Petitioner's appeal be, and is hereby, DENIED.

SIGNED AND ENTERED this 11th day of July, 1985.

_____
W. N. KIRBY
COMMISSIONER OF EDUCATION

#024-R1-1184                    13